IDA WALKER *v.* ELISHA B. WILLIAMS ET AL.

1. PARTITION. *Jurisdiction. Code* 1892, § 3101. *Claims. Payment of liens. Taxes, use and occupation.*

In a partition suit, under Code 1892, § 3101, extending the jurisdiction of the chancery court in such cases, it is proper:

(*a*) To adjust all equities between the co-tenants relating to the common property and all questions arising between them from the discharge of liens and payment of taxes;

(*b*) To vacate a purchase by one of the co-tenants, under a mortgage upon the joint property, reimbursing the purchaser for money paid in discharging the lien;

(*c*) To reimburse one of the co-tenants for taxes paid by him on the joint property;

(*d*) To charge one of the co-tenants for the use and occupation of the joint property beyond the extent of his individual interest therein.

2. SAME. *Husband and wife.*

That the husband of a co-tenant occupied the joint estate with her, and that he, under the law, is the recognized head of the family, did not limit her liability for compensation to the other co-tenants for her use and occupation of the estate.

3. SAME. *Code* 1892, § 3119. *Solicitor's fee.*

The power to allow a solictor fee in suits for partition, under Code 1892, § 3119, regulating the subject, should be exercised with caution and confined as nearly as possible to those cases in which there is no contest and no necessity for the defendants to have counsel of their own. When there is a real controversy and propriety in defendants being represented by their own counsel they should not be required to contribute to pay counsel of their adversary. *Hoffman* v. *Smith*, 61 Miss., 544 ; *Neblett* v. *Neblett*, 70 Miss., 572.

FROM the chancery court of Lauderdale county.

HON. STONE DEAVOURS, Chancellor.

Ida Walker, appellant, was complainant, and Williams and others, appellees, defendants in the court below, in the supplemental proceedings out of which the litigation sprang. The facts were these:

One John T. Ball died intestate in 1890, leaving some lands in the city of Meridian. His heirs were his son, A. H. Ball, two daughters, and a grandson. One of the daughters—Lula—married a Mr. Wilkins, and the other married a Mr. Allien. In May, 1891, Mrs. Wilkins, Mrs. Allien, and E. B. Williams, the grandson, filed a bill for the sale of the real property for division of the proceeds. A. H. Ball, who was made defendant to the bill, answered the bill, admitting its allegations, and joined in the prayer for a sale of the lands. The prayer of the bill was granted, and a commissioner appointed to make the sale. The commissioner sold the land, but at such a low price that the court refused to confirm the sale, and ordered it resold. This was in 1893, and nothing more was done in the matter until October 6, 1899. A. H. Ball was married to Ida Walker, the appellant here, and after their marriage they lived in a residence on part of this property for four years, and during that time she lent A. H. Ball, her husband, $1,700 and took a deed of trust on his undivided interest in his father's estate, embracing the lands in controversy. This deed of trust was foreclosed in 1894, and the property was bought in by appellant. Appellant, the wife of A. H. Ball, afterwards sued and obtained a divorce from her husband, and took her maiden name, Ida Walker. In October, 1899, she filed a supplemental bill, upon which this litigation arose, reciting the unexecuted decree for the sale of the real property of the John T. Ball estate, and setting out a description of the property and her title which she acquired under the trustee's sale, and prayed that the decree be modified so as to adjudge her a distributee, and that another commissioner be appointed to sell the property

for partition.   The appellees, E. B. Williams and Lula B.
Wilkins and Anna Allien, were made parties defendant to the
supplemental bill, which they answered.   They admitted that
the decree of sale existed, and all the averments in reference to
it; admitted appellant's title to one-fourth interest of the es-
tate, but alleged that all the real property had been sold and
conveyed by the heirs after the decree for the sale except lot
3 and block 8 of Ball's survey; that block 8, on which the Ball
residence stood, had been by the heirs, including appellant,
incumbered by a deed of trust to secure a loan of $800 from
John Kamper in 1896, and that in 1899 it had been foreclosed,
and that appellee Williams had bought it.   Appellant then filed
an amended supplemental bill, in which she charged that the
sale of block 8 under the deed of trust and the purchase by E. B.
Williams was fraudulent and void, and asked that it be set aside,
and the property be decreed subject to partition. Defendants an-
swered this bill, setting up a claim for taxes, and claimed rent
from complainant from the date she acquired an interest in
the estate until she left it in 1898, she having lived in the resi-
dence with her husband, A. H. Ball, during this time.   There
was a decree entered setting aside the sale of block 8 made
under the Kamper deed of trust, which was purchased by
E. B. Williams, and the property decreed subject to sale for
partition, and a commissioner was appointed to sell the land.
The charges for the use and occupation of the residence, the
claim for taxes advanced and the amount of the Kamper note,
were referred to a master to state the amount of each separately,
with interest thereon, and he was instructed to report to the
court, and to charge appellant for the four years' use and occu-
pation of the residence, with six per centum per annum, and to
charge the defendant Williams with rent at fifteen dollars per
month for the time he occupied it, with six per centum.   The
land was sold, and bought by E. B. Williams.   Complainant
filed objections to her interest in the estate being charged with
any part of the Kamper debt, and any part of the taxes, and

for any use and occupation of the land, or any part of the costs. The court overruled these objections. There was a final decree charging the estate with the repayment of the Kamper debt, and the taxes that had been paid, and the costs of the court, charging complainant for use and occupation of the residence for the time she occupied it with her husband, and also charging E. B. Williams for use and occupation of the residence, and refusing to allow any attorney's fees to complainant. From that decree complainant appealed to the supreme court.

*Hardy & Cook,* for appellant.

The fact that a co-tenant in possession bought property at a trustee's sale for $906 that is worth $4,500, having concealed from a nonresident co-tenant all knowledge of the time and place of sale, and after it was made failed to advise his co-tenant of the fact, failed to offer the privilege of contributing her share of the purchase money, and so to retain her interest, is unmistakable evidence of a fraudulent purpose, especially so when he sets up his purchase of so valuable an estate for such an insignificant sum in bar of the claim of his nonresident co-tenant. The chancellor took this view of it, for he set aside the sale under the Kamper deed of trust and declared it void.

"Every one who engages in a fraudulent scheme forfeits all right to protection either at law or in equity." The reason of the rule is given by the court in the following language: "This would be to hold out inducements to engage in schemes of fraud, as nothing could be lost by a failure to effectuate the entire plan." *Stovall* v. *Farmers & Merchants Bank of Memphis,* opinion of Chief Justice Sharkey, 8 Smed. & M., 316.

Williams was not entitled, therefore, under this rule of law, to have the money paid out refunded to him. *McLoskey* v. *Gordon,* 26 Miss., 273.

The charge against the estate for taxes of 1896, 1897, 1898, 1899, and 1900, with interest amounting to $808.20, and that this sum be paid to appellees to reimburse them for money

advanced by them with which to pay the taxes, was glaring error. Sec. 1930 of the code makes it the duty of the administrator to pay the taxes.

The next error complained of is the charge against appellant of the sum of $992.82 for use and occupation of the residence from July, 1894, to June, 1898.

The general rule on the subject of domicile during coverture is stated, 10 Am. & Eng. Ency. Law (2d ed.), 32, as follows:

"By marriage a woman, whether a minor or an adult, loses her domicile and acquires that of her husband, and that during coverture the domicile of the wife continues to be that of the husband and changes with his."

In the note to this text a vast number of authorities are cited, embracing English, Canadian, and American cases.

The following Mississippi authorities are cited: *Hairston* v. *Hairston,* 27 Miss., 704; *Bate* v. *Incisa,* 59 Miss., 513; *Suter* v. *Suter,* 72 Miss., 345.

The great apostle Paul said in his letter to the church at Ephesus: "Wives, submit yourselves unto your husbands, as unto the Lord. For the husband is the head of the wife, even as Christ is the head of the church." (Eph. v. 22, 23.)

The next error complained of is that the court charged the enormous bill of costs, amounting to $128, to the estate, when it should have been charged to the appellees, as they are responsible for the litigation.

Appellant proposed an amicable partition which was entirely practicable without the intervention of the court, as all the parties are of full age; but this was declined, doubtless for the simple reason that they claimed the title to the homestead, which constitutes nearly the entire estate left, by adverse title, acquired at the fraudulent sale under the Kamper deed of trust.

The court erred in overruling appellant's motion for the allowance of reasonable attorney's fees. Sec. 3119 of the code provides that the court may allow a reasonable solicitor's fee in all cases of partition to the complainant or to the solicitor

conducting the suit, to be taxed as a common charge on all the interests.

*Alexander & Alexander,* and *Miller & Baskin,* for appellees.

The sale under the Kamper trust deed having been set aside because the purchaser, being one of the grantors and a co-tenant, was disqualified to purchase, the trust deed was of course revived, and, being still a lien, it was a charge in favor of Williams, who had paid the amount due as his bid, and thus prevented foreclosure. Williams released the land from the burden of the trust deed, and on the settling of the equities he was properly reimbursed.

The taxes were properly allowed as a charge on the land. What difference does it make as to which of defendants paid them? They were paid; complainant did not pay them.

It was clearly right to charge complainants with one-fourth of the taxes. None of defendants are complaining as between themselves. It matters not to complainant which of defendants paid the taxes.

The question of domicile has no place in this case. A. H. Ball was in possession until 1894. He then conveyed to his wife, and the possession after that will of course be referred to her. Possession as between husband and wife living together on land will be referred to the one having the legal title. *Hill* v. *Nash,* 73 Miss., 849.

TRULY, J., delivered the opinion of the court.

Section 3101, Code 1892, provides that chancery courts in which suits for partition are instituted shall have power, in order to prevent multiplicity of suits, to "adjust the equities between and determine all claims of the several co-tenants." It was proper, therefore, for the court in the instant case to inquire into and decide all controverted equities, and make a final adjustment of all claims arising out of and concerning the property sought to be partitioned. It is an established principle

of equity that tenants in common sustain toward each other such a relation of trust as forbids one to do any act hostile to the interest of the others, or to acquire by any means any title to the common property adverse to the claim of his co-tenants. Hence it was proper for the court to annul and hold for naught the sale under the Kamper trust deed, whereby appellee, E. B. Williams, sought to acquire title to the common property. This title, so acquired, inured to the benefit of all those who were jointly interested in the property. However, as the Kamper trust deed constituted a lien on the entire property sought to be partitioned, and rested equally on the interest of each co-tenant, it was proper to charge the common estate with the money expended in payment of this debt. While it is true that one co-tenant cannot fraudulently pay off a lien or purchase at a sale thereunder, so as to obtain any title adverse to his co-tenants, yet he is entitled to be reimbursed the money advanced to discharge the common burden, because the payment thereof was necessary for the protection of the common estate. Therefore the money expended by appellees in the liquidation of the Kamper note and lien was properly charged against the estate. *Burns* v. *Dreyfus,* 69 Miss., 213 (11 South., 107; 30 Am. St. Rep., 539); *Harrison* v. *Harrison,* 56 Miss., 174. Making an application of the same principle, the money advanced to pay the taxes on the common estate was also properly charged against it. Under previous adjudications, state, county, and municipal taxes are recognized as legal burdens imposed on property, the discharge of which being for the preservation of the estate and for the benefit of all concerned, the ones paying the same have a lien therefor on the share of their co-tenants for repayment. The master reported that the appellees had paid the taxes, and the chancellor so found. *Davidson* v. *Wallace,* 53 Miss., 475; *Allen* v. *Poole,* 54 Miss., 323.

It was proper to charge the interest of appellant in the property sold for partition with a reasonable sum for the use and occupation thereof. It is a well-settled equitable principle

that each co-tenant has a lien upon the interest of every other for the value of the use and occupation of the joint estate beyond such tenant's individual interest therein, and also any sum which may have been collected and appropriated by such tenant as revenues arising therefrom. This is expressly held in *Medford* v. *Frazier,* 58 Miss., 241, and is reaffirmed as the correct doctrine to which full scope and effect is to be given in all proper cases in *Burns* v. *Dreyfus, supra,* where the court, through Cooper, J., says: "We recognize to its full extent the equitable principle that in the partition of lands held in common the court will, in the division of the property—or of its proceeds, if indivisible, and therefore sold for partition—do full justice between the co-tenants by directing accounts to be taken of receipts and disbursements by them, and will so apportion the fund as to do complete equity." The fact that the husband of appellant also occupied the premises, and that he, under the law, is the recognized head of the family, in no wise limits appellant's liability to render compensation to her other co-tenants for her use and occupation of the joint estate. The property was occupied by appellant as tenant in possession by virtue and strength of her own title, and the question of legal domicile does not affect the rights of her co-tenants. From a careful inspection of this record we are unable to see that appellant has been denied any of her rights by the final decree herein. Upon her, as tenant in common with the appellees, there rested, under the law, the duty to pay her proportion of the lien which by joint action of all concerned was placed on the property, and the taxes which, by operation of law, were annually levied. Inasmuch as she failed to pay her proportion at the time it fell due, and it was paid by her co-tenants, she is now equitably bound to refund to them the money which they expended for her benefit, and for the protection of her interest in the common estate. The final decree herein requires her to do nothing more.

Nor was it error in the court to decline to allow a fee to the solicitor of complainant. This case falls expressly within the prohibition against such award contained in the opinions of this court in *Neblett* v. *Neblett,* 70 Miss., 572 (12 South., 598); *Hoffman* v. *Smith,* 61 Miss., 544.

*Affirmed.*