Hudson *v.* Belzoni Equipment Company.

Division A.   Mar. 19, 1951.

No. 37780  (51 So. (2d) 223)

Green, Green & Cheney, and Julia S. Griffin, for appellant.

**Montgomery & Varnado**, for appellees.

**Arrington, C.**

Appellant, W. C. Hudson, a minority stockholder, filed a bill of complaint against the Belzoni Equipment Company, a Mississippi corporation, and C. R. Gholson, C. L. Hooker, B. S. Reed, J. F. Slaughter, John C. Halbrook, H. L. Martin, Bert N. Reagan and E. G. Reagan, being all of the stockholders in the corporation, in the Chancery Court of Humphreys County, asking for the appointment of a receiver to liquidate and dissolve the corporation. From a decree dismissing the bill of complaint, appellant appealed.

The record herein shows that the Belzoni Equipment Company was organized by the appellant, W. C. Hudson, and, at the time of its incorporation in 1940, had an authorized capital of $20,000.00, being 400 shares of the par value of $50.00 each, and the original capital stock paid in at the time of the organization was $6,800.00;

that in 1946, in addition to a cash dividend of 5%, a stock dividend of 200% was declared. When the bill was filed there were 462 shares. Appellant Hudson owned 93 shares and the directors, B. S. Reed, C. R. Gholson, J. F. Slaughter, John C. Halbrook, and C. L. Hooker, owned 327 shares. In April, 1948, by amendments to its charter, the authorized capital stock was increased to $40,000.00.

According to exhibits filed, the company, at the end of 1940, had assets of $14,181.91 and earnings of $792.86. The record shows that the appellant was the manager of said corporation from its organization until the early part of 1942. The record shows that, when the appellant left the company, he pledged his stock with a bank for a loan. It was later acquired by the corporation and he had to resort to the courts to regain his stock. That case was decided February 9, 1948. Hudson v. Belzoni Equipment Company et al., 203 Miss. 212, 213, 33 So. (2d) 796. That suit was for redemption of corporate stock and for an accounting. The appellant admitted that an accounting was had with the company and that his 93 shares of stock was issued to him in May, 1948.

As grounds for the appointment of a receiver and dissolution of the corporation, appellant charged that John C. Halbrook, a stockholder and director in the corporation, owned the building occupied by the company and received rent therefrom; that since the culmination of the former lawsuit, when complainant was awarded his 93 shares of stock (issued to him in May, 1948), there had been no dividends paid on his stock; that the fees of the directors were increased from $150.00 to $400.00 per year; that stockholders were allowed a discount upon all equipment; that C. L. Hooker, a director, was manager and received a salary, together with a bonus of 15% on the net profits; that the appellant, since the issuance of his stock, had been given no notice of any stockholders' meeting; that the management of the corporation, since the issuance of his stock, had sought and was seeking to deprive him of his rights and his capital was improperly

and unlawfully frozen and, through their actions, set out to cause a gradual dissipation of the assets of said corporation so as to lead to eventual insolvency without loss to any of said shareholders except complainant; ''that the acts of said directors in diverting the revenues and profits of said corporation and in distributing said assets, revenues, and profits of said corporation in such fashion so as to deprive this complainant of that to which he is lawfully and legally entitled have been wilfully, intentionally, improperly and unlawfully done and thereby have worked a legal fraud upon this complainant so as to cause said directors to each and every one be individually liable to this complainant for that so done and so distributed, whereasto there should be between this complainant and these directors, defendants, an accounting had.''

The prayer of the bill is as follows: ''. . . that this court order a liquidation of the Belzoni Equipment Company and that your petitioner, W. C. Hudson, be appointed receiver of said corporation by this court, for the purpose of liquidating and dissolving said corporation, so as to equally preserve the rights of all the stockholders therein, and for such other and further relief as the court may think proper and necessary in the premises.''

Appellees answered and admitted that the corporation rented a building from Halbrook, one of the directors; that no dividends had been paid since 1946; that directors' compensation had been increased; that a discount was allowed to stockholders of the corporation purchasing equipment; that the manager received a salary together with a commission of 15% on the net profits, and that no notice was given to appellant of stockholders' meetings because the time for said meetings was permanently fixed in the by-laws of the corporation. They denied that they were seeking to divert or had diverted any profits or revenues from the corporation or that they were in any way trying to defeat or deprive appellant of his rights and his stock; denied that the corporation

was being managed so as to lead to eventual insolvency, and denied that anything had been wilfully, intentionally, improperly or unlawfully done which amounted to a legal fraud upon the appellant, which would cause the directors to sustain any liability to the complainant, and denied that a receiver should be appointed to liquidate and dissolve the corporation.

The bill of complaint was filed on October 6, 1949, and according to the exhibits filed and the evidence herein, the corporation is not insolvent. Its earnings have steadily grown for the nine year period of its operation. At the end of business in 1948, the assets were $79,975.40, surplus, $25,073.78, capital stock $23,100.00 and earnings $10,926.02. At the time of the trial, the accounts receivable on November 30, 1949, were $11,249.42, and the notes payable were $26,034.32. The directors had personally endorsed the notes in the amount stated. The evidence further shows that there had been an enormous increase in the business and the directors were called on almost daily to advise and transact business for the corporation. The testimony in the record is undisputed that the appellant, when he organized and managed the corporation, instituted the policy of allowing stockholders a discount on purchases. He was familiar with the by-laws and that the directors were paid fees. It was agreed that dividends were paid by the corporation in the years 1942, 1944, 1945 and 1946, including the 200% stock dividend (1946). It was further agreed that the directors of the corporation were paid the following amounts as directors' fees in the years as follows: 1942, a total of $300.00 to all directors; 1943, $1200.00 to all directors; 1944, $1200.00 to all directors; 1945, $1200.00 to all directors; 1946, $750.00 to all directors; 1947, $1,000.00 to all directors; and 1948, $2,000.00 to all directors. These amounts were paid in equal proportion to the five directors each year. It was further agreed that the pro-rata of all dividends was accounted for and paid to the complainant when his stock was issued to him in 1948.

The by-laws provide that "the directors shall receive no compensation for their services as such." For extraordinary services, they may be compensated. In 13 Am. Jur., Section 1030, pages 976-977, it is stated: "The rule to be deduced from the modern and best considered cases is that a person, although a director or other officer of a corporation, may recover the reasonable value of necessary services rendered to a corporation, entirely outside the line and scope of his duties as such director or officer, performed at the instance of its officers, whose powers are of a general character, upon an implied promise to pay for such services, when they were rendered under such circumstances as fairly to indicate that the parties intended and understood they were to be paid for, or ought to have so intended and understood." Shackelford v. New Orleans, Jackson, and Great Northern R. R. Company, 37 Miss. 202.

In Annotations, L. R. A., 1917F, pages 319-323, it is stated: "It is almost the universal rule that a director or an officer rendering services outside the scope of his official duties may recover compensation therefor, although not provided for by express contract, if the circumstances are otherwise such as to raise an implied contract. And this rule seems entirely fair and proper. It puts directors, as to services rendered by them to the corporation outside the scope of their official duties, in exactly the same position as any other stockholder, or, for that matter, any person unconnected with the corporation, who performs services which he is not bound to perform and which the corporation accepts under circumstances which make it only just that it render compensation therefor."

The appellant relies for the appointment of a receiver on the authority of Brent v. B. E. Brister Sawmill Company, 103 Miss. 876, 60 So. 1018, 43 L. R. A., N. S., 720. That case was cited by the court in the case of Hyman Mercantile Company et al. v. Kiersky et al., 192 Miss. 195, 198 So. 574, 4 So. (2d) 881, 883. The court, after quoting

from the Brent case said: "The appellant argues that Sections 4173, 4174 and 4175, Code of 1930, which were adopted after the Brent case was decided, became the exclusive authority for the dissolution and winding up of the affairs of a domestic corporation at the instance of one or more of its stockholders or creditors. Section 4173 provides, among other things, that the stockholder or creditor shall have the right to resort to the chancery court for the dissolution of the corporation and the liquidation of its affairs when it 'becomes insolvent or ceases to be a going concern, or while insolvent sells its franchises in whole or in part'. We do not decide this question because under the Brent case, and the other authorities cited, ██ in order for minority stockholders in a domestic corporation to put an end to the corporation there must be either insolvency or mismanagement which must lead to insolvency. In the present case there is no claim of insolvency and the evidence is overwhelming to the effect that the present management is not leading to insolvency."

██ Th evidence in the instant case shows that the management of the corporation is not leading to insolvency but, on the contrary, shows that the stock is worth more than seven-to-one. Hence there was no reason to appoint a receiver.

It is true that no dividends have been paid since 1946, but on evidence in this case, the money or value is in the business. In Landstreet et al. v. Meyer et al., 201 Miss. 826, 29 So. (2d) 653, 656, with reference to control of corporations the Court said: ██ "Corporations must be allowed to function under majority control, as do most institutions in this country, so long as the majority does no actual wrong to the minority or to others. Courts are not to be called on to operate or control them except in cases wherein such interference is essential to justice; and in interfering with what the majority has done in such a case as this, real caution must be taken not to work a wrong in striving towards the right. Upon a

searching review of this record we think the risk of doing a wrong is too great in requiring that what was paid to Mr. Landstreet between the dates mentioned in the foregoing paragraph shall be in any part refunded by him.''

The primary purpose of this suit was to obtain the appointment of a receiver and dissolve the corporation on the ground that the management was leading to insolvency and was a suit against the corporation. Such suit was not brought for the benefit of stockholders. In such circumstances it is inconceivable that the court, under a prayer for general relief, should go so far afield as to let appellant recover his pro-rata share of funds alleged to have been unlawfully paid to the directors, or to recover the same for the corporation. Issues must be tried as made up. If the directors have collected compensation to which they are not entitled, redress therefor can be obtained by a proper proceeding, and this decision is without prejudice thereto.

We are of the opinion that under the pleadings and proof in this case, the chancellor was correct in dismissing the bill.

Affirmed.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the case is affirmed.