CRUM *v.* UPCHURCH

No. 40571          November 18, 1957          98 So. 2d 117

*Montgomery & Varnado,* Belzoni, for appellant.

*Womack* & *Womack, L. G. North,* Belzoni, for appellee.

LEE, J.

E. R. Crum, Jr., as a result of a controversy with his former wife, Mrs. Jean S. Upchurch, appealed from the terms of the final decree which, in ordering a partition of their joint property, denied him credit for certain mortgage payments prior to her remarriage, continued the use of the furniture and other equipment by two of the children until they should reach their majority, and increased their monthly support payments from $75 to $100.

The litigation arose in this way: The parties were married on December 30, 1934. They owned jointly the home in which they lived in the town of Belzoni; and on September 23, 1949, they entered into a "property" and "family" settlement. It was agreed that Mrs. Crum should have the use of the residence and contents in which to live with the children awarded to her as long as she remained single. Crum was to make the monthly payments due on a mortgage on the property to First Federal Savings & Loan Association of Belzoni, as they came due, and also to pay the insurance and taxes thereon. In addition, commencing October 1, 1949, he was to pay monthly to Mrs. Crum $100 as alimony and $25 as support for each of the children awarded to her; but the alimony would cease in case of her remarriage.

Thereafter on October 17, 1949, Mrs. Crum filed suit for a divorce. The four children of the marriage were named. She asserted that $100 alimony and $25 per child monthly and the use and occupation of the Belzoni residence and contents as long as she was single would be reasonable support.

The court, by its decree of date of December 6, 1949, awarded her a divorce and the custody of Joyce Patricia and Sandra Jean, girls 10 and 2 years of age respectively. The custody of Ernest Roy III and Robert Lee, boys 9 and 5 years of age respectively, was awarded to their

father. There was no mention whatever of alimony, support, etc.

On September 28, 1954, Mrs. Crum filed a petition for modification of the foregoing decree. She attached a copy thereto and also a copy of the agreement of date of September 23, 1949. She stated that Crum had complied with the agreement until August 1954, but complained that he was then refusing to make the alimony and mortgage payments. She alleged that he was able to do so, and because of her alleged ill health and the increased cost of living, she prayed for increased support of $150 and $50 respectively.

Crum's answer to the petition averred that he complied with the predivorce contract for a time, but admitted that he had failed to make alimony payments since August 1954, and that he was not making the payments on the house, but that he had continued the support payments for the children. He said that his earnings had decreased and that no increase in the property settlement should be made. His answer also contained a plea of res judicata by reason of the divorce decree. He made his answer a cross bill and sought to have the court require Mrs. Crum to convey her interest in the property to him. He also alleged the execution of the property settlement and attached a copy thereof as an exhibit.

Mrs. Crum's answer to the cross bill denied that she had made any agreement to convey her interest in the property, and reiterated her claim for an increase in alimony and support of the children.

By its decree of December 8, 1954, the court sustained the plea of res judicata, but increased the support for each of the children to $37.50 a month. Crum was also ordered to make the delinquent payments to the Savings & Loan Association and keep them current in order that the two children might have a home. It was expressly stated therein that this action did not involve an adjudi-

cation of the equities of the parties under their contract of September 23, 1949.

On June 22, 1955, Mrs. Crum married William Upchurch.

Crum, on November 2, 1955, filed a petition to reopen this cause on account of a change in conditions, namely, the remarriage of Mrs. Crum, and for partition of the property. He alleged that his ''obligation should be fixed at whatever sum is necessary to properly support the two named minor children and that petitioner is perfectly willing to pay whatever sum is fit, suitable and proper to support'' them. He prayed for an accounting, claiming as credits his payments on the mortgage to the Savings & Loan Association, on the deed of trust to D. Lundy, the cost of repairs, insurance, and certain legal expenses in the sale of a 50-foot strip off of the home lot, and for the recovery of furniture and equipment in the home.

Mrs. Upchurch in her answer admitted that the decree of December 8, 1954, awarded $75 for support of the children, but averred that they were also entitled to the use of the home. She conceded that she was not entitled to be furnished a home, but alleged that Crum was not relieved of his obligation to the children. They both owned the furniture jointly and such property should be kept for the children until they became 21 years of age. She denied that Crum was entitled to credit for the payments on the mortgages, upkeep and insurance, because he was obligated to make such payments in order to keep a roof over the heads of the children. She admitted that ''the decree should be reopened and the support and maintenance of the children be adjusted in such manner as the court deems fit and proper under the altered circumstances.''

The court, by its decree of date of December 13, 1955, dismissed the foregoing petition without prejudice.

On May 3, 1956, Crum filed another petition to reopen the cause and for the partition of the property. Like al-

legations were made as in his answer and cross bill in the previous proceedings. Again he claimed as credits all payments on the mortgages, and for repairs and insurance. He referred to the decree of December 8, 1954, which required him to pay $75 for the support of the two girls and to furnish the house as additional support for them. But he showed that the circumstances had changed and his former wife was then married. He stated that he "is perfectly willing to pay whatever sum is fit, suitable and proper for the support of the above two named minor children and that the support of the said two minor children should be fixed at whatever sum is necessary to properly support and care for" them. He further alleged that, if it was absolutely imperative for him to furnish the home for the children, the possession thereof should be awarded to them until they should become 21 years of age.

The answer of Mrs. Upchurch denied that it was to the best interest of all parties to partite the property, and denied that Crum was entitled to credit for his alleged expenditures as a capital investment. She admitted that the amount paid by her on the D. Lundy deed of trust was correct, and other matters not necessary to mention here. She admitted her remarriage but averred that her present husband was under no obligation to furnish a home for the two children. She denied that the decree should be materially changed.

The cause was set for a vacation hearing, but because of the illness of counsel for Mrs. Upchurch, the cause was continued several times and until December 5, 1956.

Both Crum and Mrs. Upchurch testified, and there was no substantial controversy between them in regard to the amounts severally expended by them. In the course of his testimony, Crum expressed a willingness to do whatever the court should see proper to award for the support of the children. On cross examination, he admitted that he and his former wife entered into the

property settlement. When he was asked if, as a part of that agreement, he was to furnish the home as long as Mrs. Crum remained single, there was objection by his counsel that "the agreement speaks for itself". The court sustained the objection, saying "the agreement was gone into at the previous trial"; and the record discloses that the decree of December 8, 1954, was then read to the court. Later Crum admitted that it was his responsibility to furnish a home for the children.

Mrs. Upchurch testified that the monthly cost of support of the children was approximately $50 each.

The final decree of date of December 10, 1956, adjudicated that all payments on the mortgages prior to Mrs. Crum's remarriage were part of the alimony and support in addition to other payments made in compliance with the orders of the court for Mrs. Crum, Joyce and Sandra; but that Crum was entitled to credits for the payments which he made following the marriage, that is, from July 1, 1955, through November 1956; that the two girls should continue to have the use of the furniture and equipment until they become of age; and, for the support of the girls, Crum should pay their mother $100 per month commencing as of July 1, 1955. The other items in the accounting are not involved on this appeal. To satisfy the charges as finally allowed and for a proper division of the proceeds, the property was ordered to be sold; and at such sale Mrs. Upchurch purchased the same for a consideration of $7,350 and the assumption of the outstanding indebtedness to the Savings and Loan Association. The sale was confirmed and distribution of the proceeds was ordered to be made in accordance with the original decree.

Appellant contends that, on the partition of the property jointly owned by the parties, he was entitled to credit for all sums which he paid on the mortgages to the Savings and Loan Association and to D. Lundy. To that end, he cites the line of authority to the effect that

one cotenant is equitably bound to refund to another the money necessarily expended for the former's benefit and for the protection of his interest in the common estate. Among the cases cited are, Walker v. Williams, 84 Miss. 392, 36 So. 450; Gilchrist Fordney Co. v. Ezelle, 141 Miss. 124, 106 So. 269; Reed v. Henson, 158 Miss. 224, 130 So. 108.

That principle is not involved here. Before the commencement of the divorce action, the appellant agreed to the award of the residence and its contents to Mrs. Crum as a home for her and the children in her custody, and that he would make the mortgage payments thereon and take care of certain other expenses. In addition, he also agreed to pay monthly by way of support $100 to his wife and $25 for each of the children. All of these benefits to and for his wife and children were voluntarily assumed by him. While most of these benefits were said, in the bill of complaint, to be proper, apparently the court did not deal with the contract. At least the decree was silent as to the matters agreed upon. Subsequently however, in the proceeding instituted September 28, 1954, both parties brought the property settlement to the attention of the court. While the court, in that controversy, sustained the plea of res judicata, it increased the support payments for the children from $25 to $37.50. The decree also expressly required the appellant to make the delinquent payments to the Savings and Loan Association, keep them current, and pay the taxes. These latter payments constituted a part of the over-all alimony and support, and the court obviously so construed them.

If the payments on the mortgages had not been made, foreclosure would have doubtless followed. Failure to pay the taxes likewise would have resulted in a sale of the property. Thus, in either contingency, the voluntary agreement of the appellant to provide a home would have been ineffective. Manifestly the court, in its decree of December 8, 1954, did not intend to let the appellant welsh

in any way on his contract. Vaughn v. Vaughn, 83 So. 2d 821. Such payments by him provided a home for his former wife and children. That was the purpose. He did not thereby become vested with an increased equity in the property. Consequently the court was correct in refusing to allow him credit for such payments made prior to his former wife's remarriage.

■■■ Mrs. Crum's remarriage of course absolved appellant from any further support of her. His obligation to pay her alimony or furnish her a home ceased. But this did not release him from the duty to furnish a home for his children. The court may from time to time make decrees in regard to the maintenance of children. Section 2743, Code of 1942 Anno. ■■■ The duty of a father to support his minor children is so elemental that it needs no citation of authority. . ■■■ Appellant does not contend to the contrary—he freely admitted his obligation in his pleadings and in his testimony. What he now says is that the court had no authority, under the pleadings, to increase the amount retroactively from $75 to $100, beginning July 1, 1955.

But, in his pleadings, as seen above, he actually invited the court to fix the support of the two girls at whatever sum might be deemed to be proper. Besides, prior to the remarriage, he was paying $75 for the support of the children, and, at the same time, making monthly payments of $41.80 to the Savings and Loan Association to assure a home for them. This constituted a total amount of $116.80 for their support each month. July 1, 1955, the first day of the month after his wife's remarriage, was fixed as the date of the accounting. The court gave him credit for all such payments which he made after that time. By fixing the support of the children at $100 per month, the court actually reduced rather than increased the support, because the mother was then required to furnish their home. There was no retroactive increase, and mani-

festly there was no error in the decree of the court in that respect.

█ █ The court was also fully justified in making no change as respects the use of the furniture and equipment by the girls as long as they are minors.

█ █ Appellant insists that the predivorce contract was not introduced in this particular hearing and should have no bearing on the present controversy. A sufficient answer to that contention is that, when his counsel objected to questions about the content thereof on the ground that "the agreement speaks for itself", the court sustained the objection, saying, "the agreement was gone into at the previous trial", thereby indicating the court's familiarity with the instrument. The objection was not based on the ground that the instrument was not before the court, but that it spoke for itself, which seems to signify that it was actually before the court. Moreover, the decree of December 8, 1954, was then read to the court. The papers were all in the same file. The court evidently knew that the agreement had been considered in arriving at the terms of the decree of December 8, 1954. Thus it could hardly be expected that the court, so soon after directing that these payments should be made in order to furnish a home for the wife and children, would then ignore its former decree, give the appellant credit therefor on the debt, and thereby increase his equity in the property owned jointly by him and Mrs. Upchurch. The contention of the appellant in this respect appears to be untenable.

Full consideration has been given to all questions which have been raised. No reversible error appears in the record, and the cause must be affirmed.

Affirmed.

*McGehee, C. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.

## ON MOTION TO STRIKE A PORTION OF THE RECORD

McGEHEE, C. J.

The appellant in this cause has filed a motion to strike from the record on this appeal Pages 1 to 61 thereof inclusive, on the ground that they relate to former proceedings between the same parties involving a divorce, custody of children and the allowance of alimony to the wife, and for the support of two of the children of the marriage, the custody of whom was awarded to the wife, whereas the present proceeding involves "a petition to reopen the cause and allow partition" of their residence property, where they had formerly resided.

Rule 2 of the Revised Rules of this Court is invoked as the ground for the motion to strike from the record the pages thereof hereinbefore referred to. That rule provides: "A transcript shall not contain any part of the case except the pleadings, evidence, instructions, bills of exceptions and the order, judgment or decree appealed from * * *".

The appellant cites in further support of his motion Sections 1284, 1291 and 1644, Code of 1942, and the following decisions of this Court: Roberts, et al. v. Lyon Co., 124 Miss. 345, 86 So. 851; Barlow v. Serio, 129 Miss. 432, 91 So. 573; Bridgeman v. Bridgeman, 192 Miss. 800, 6 So. 2d 608; Hudson v. Belzoni Equipment Co., 211 Miss. 178, 51 So. 2d 223.

But in this same numbered cause, between the same parties, a decree of divorce was rendered on December 6, 1949, wherein two of the four children were awarded to their mother, the appellee here, and the other two awarded to the father, the appellant here, and the mother was granted a divorce. It appears that on September 23, 1949, the parties had entered into a separation agreement in writing and wherein it was stipulated that the father was to pay the sum of $100 per month beginning October

1, 1949, for the support of the mother and the sum of $25 per month for each child kept and maintained by her in the home located on the land involved in the present suit for partition. However, the divorce and custody decree of December 6, 1949, makes no reference to this written contract or to any agreement for the payment of alimony by the father.

Thereafter, on October 30, 1954, there was a petition filed by the mother to modify the former decree because of changed circumstances so as to require the father to pay to the mother of the children the sum of $150 per month for her support and the sum of $50 per month for each of the children in her custody. In this petition the fact was alleged that the written contract had been entered into by the parties. The father filed an answer, plea in bar and cross-bill to the petition for modification, and admitted that he had complied with the terms ''of said pre-divorce contract from the time of the rendition of the said divorce decree until some time in the month of August 1954.'' He alleged that the mother had since remarried.

It appears from the separation agreement that the parties agreed that the mother was to have the use of the residence so long as she remained unmarried, and the outcome of that proceeding for modification of the former decree was that the proceeding was dismissed without prejudice on December 13, 1955. But in the meantime it appears that a decree had been rendered on December 8, 1954, upon the petition for modification of the original divorce and custody decree, and wherein the father of the children was required to pay $37.50 to each of the two children then in the custody of the mother, for their support, and that decree provides: ''and that to the end that the said minor children may have a home that the defendant should pay any delinquent payments to the First Federal Savings and Loan Association of Belzoni, Mississippi''.

The petition in the instant proceeding for the partition of the homestead property was filed on May 3, 1956, set up certain debits and credits alleged to be due and owing between the respective parties, and asked for an adjudication of an accounting between them. The appeal here is taken relative to the allowance and disallowance of the debits and credits made by the court in the accounting. Since the petition to reopen the cause, No. 2184, in which the divorce, custody and allowance decrees were rendered, seeks relief from the payment of the alimony of $37.50 per month, and from the payment of any alimony to the mother, and tenders the sum of $525 in full settlement for past due alimony, it is contended by the appellee in the instant appeal that the former pleadings and decrees are properly a part of the record on this appeal. They are not made exhibits to the answer of the defendant to this partition proceeding nor were they introduced upon the trial of the partition suit. Whereas the appellant contends that the former decrees were final decrees and that the instant proceeding is a separate and distinct controversy. But since Section 2743, Code of 1942, provides that ''the court (after granting a divorce and awarding custody of children and providing for alimony) may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require'' the former decrees were not final decrees in the cause, and the petition for partition of the homestead property in the instant proceeding does not seek that relief alone, but seeks relief from some of the obligations imposed upon the petitioner by the former decrees, and asks for an accounting between the parties in regard to what he has paid, or was obligated to pay, under the terms thereof.

Rule No. 2 of the Revised Rules of this Court, together with the cases cited in support of the appellant's motion to strike the former proceedings referred to therein, would ordinarily entitle the movant to have his mo-

tion sustained, but under the situation presented by the petition to reopen the cause and allow a partition, and for the other relief prayed for as against certain obligations imposed on him by the said former decrees, we are unable to determine without a reading of the entire record on this appeal, and considering the briefs of counsel on the merits of the cause, whether or not the former pleadings and decrees are properly a part of the record on this appeal, and we have therefore concluded that we should neither sustain nor overrule the appellants motion at this time but that the same should be passed for a final disposition until a consideration of the appeal on its merits.

Motion to strike a portion of the record is passed until the consideration of the case on its merits.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.*, concur.