Vonnie P. VOYLES, Appellant,

v.

Jenith E. VOYLES, Appellee.

No. 5603.

Supreme Court of Alaska.

May 14, 1982.

---

Noel McMurtray, Anchorage, for appellant.

Albert Maffei, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Justice.

The sole issue in this appeal is whether the remarriage of a former wife automati-

cally terminates her right to continued alimony payments. We hold that it does.

Vonnie and Jenith Voyles were married on February 20, 1970, and divorced on April 6, 1979. Under a joint custody provision in the divorce decree, Jenith was awarded physical custody of the parties' two minor children and $175.00 per month per child as child support. She was also awarded $150.00 per month as "spousal support," or alimony, to "remain in full force and effect until such time as Jenith Voyles gets in a position to support herself."

When Vonnie Voyles learned of his ex-wife's remarriage, he moved to terminate his obligation to pay spousal support. Voyles' sole reason for requesting termination of alimony was his ex-wife's remarriage. In testimony before a master, he established no significant change in his financial circumstances and his subsequent challenge to the master's recommendation against termination in superior court was unsuccessful. Vonnie Voyles appeals to this court, limiting his appeal to the question of whether remarriage of a divorced spouse is, as a matter of law, a change of circumstances requiring termination of alimony.

Alaska's alimony statute provides for modification of alimony awards with the following language:

Any time after judgment, the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, or for the appointment of trustees for the care and custody of the minor children, or for their nurture and education, or for the maintenance of either party to the action.

AS 09.55.220. The language does not specifically provide that remarriage justifies the termination of alimony, and this court has not previously ruled on the question.[1]

Termination of alimony is automatic upon the remarriage of the dependent spouse under the statutes[2] and the case

---

1. We have, however, ruled that the obligation to pay alimony, in the absence of an agreement to the contrary, terminates upon the death of the obligor. *Estate of Kuhns v. Kuhns*, 550 P.2d 816, 817–18 (Alaska 1976).

2. *See* Ala.Code tit. 30, § 2–55; Cal.Civ.Code § 4801(b) (West 1970); Colo.Rev.Stat. § 14–10–122(2); Del.Code tit. 13, § 1519(b); Nev.

law[3] of a number of states. Other states have ruled that remarriage establishes a prima facie case for termination which the dependent spouse must rebut.[4] We think the rule requiring automatic termination of alimony upon the dependent spouse's remarriage is a more sound rule and we adopt it here.

Today we seek, as far as is possible, to finalize the dissolution of a marriage and to encourage the self-sufficiency of spouses after dissolution. Thus, we have "adopted the view that courts should be encouraged to provide for the financial needs of spouses by a property disposition, rather than by alimony." *Malone v. Malone*, 587 P.2d 1167, 1168 (Alaska 1978) (citing *Messina v. Messina*, 583 P.2d 804 (Alaska 1978)).

For support to continue to a dependent spouse when he or she has chosen to form a new marital relationship is, in our judgment, unsound as a matter of public policy. If the dependent spouse has entered into a new marital relationship, we think that the remarriage should serve as an election between the support provided by the alimony award and the legal obligation of support embodied in the new marital relationship. Unlike the prima facie rule, only the rule requiring automatic termination can provide some certainty to an independent spouse who might also wish to enter into new marital relationships, raise a family, or take on new financial responsibilities.

To permit a spouse to elicit the support of two spouses simultaneously, a conceivable result under the prima facie rule, would be unreasonable. Because there is a legal obligation of support embodied in the new marital relationship, the obligation of support from the past marital relationship should end. While the legal obligation of support is not the equivalent of actual support, the court will presume from the fact of remarriage that adequate support for the necessities of living will be provided to the dependent spouse through the new marriage. In this way, we avoid constant judicial intrusion into the new marital home to determine if sufficient support exists to constitute a substantial change of circumstances requiring termination of alimony.

We therefore hold that, by the act of remarriage, the formerly dependent spouse elects to abandon the alimony provision established at the termination of the spouse's preceding marriage. This rule provides the finality we seek under our divorce statute. To adopt the prima facie rule would be to permit a dependent spouse to obtain the equivalent of the obligation of support in the form of alimony after securing an obligation of support from a second marriage. The prima facie rule would permit the dependent spouse to look to both spouses again if the second marriage failed and a third was entered into. Or, if alimony was decreased at the time of remarriage, it could be increased after that marriage's failure. We do not think our alimony statute contemplates such results. In light of our intention to disentangle fully interspousal affairs upon dissolution, to provide a final resolution of the parties' affairs, and to encourage self-sufficiency of the spouses, we feel that a rule of automatic termination is necessary.

■ For these reasons we hold that remarriage of a former spouse constitutes a substantial change of circumstances which requires the termination of alimony as a matter of law. We wish to make it clear, however, that this rule does not apply where "alimony" is in fact intended to provide child support, which is a continuing

---

Rev.Stat. § 125.150.5; N.Y.Dom.Rel.Law § 248 (McKinney 1977); *see also* Uniform Marriage and Divorce Act § 316(b).

3. *Chaachou v. Chaachou*, 135 So.2d 206, 221 (Fla.1961); *Despain v. Despain*, 78 Idaho 185, 300 P.2d 500, 503 (1956); *Simpson v. Simpson*, 18 Md.App. 626, 308 A.2d 410, 412 (1973); *Crum v. Upchurch*, 232 Miss. 74, 98 So.2d 117, 121 (1957).

4. These positions are discussed in H. Clark, *The Law of Domestic Relations* 457 (1968); Annot., 48 A.L.R.2d 270, 283 (1956 and later case service 1980); Note, *Domestic Relations: Modification of Future Alimony Payments Due to Changed Circumstances*, 20 Washburn L.J. 66, 72 (1980).

obligation, or where the award is an integral part of a property settlement and thus a property right vested in the dependent spouse, or where the decree or agreement imposing the alimony obligation expressly provides that it is not to terminate upon the remarriage of the recipient.

From the record before us, we have determined that Jenith Voyles has entered into a new and valid marital relationship, a fact Ms. Voyles did not challenge at the trial court level. Under the rule established in this case, her remarriage constitutes such a substantial change of circumstances that alimony payments by Vonnie Voyles may be terminated. Therefore, the decision of the trial court is REVERSED.

RABINOWITZ, Chief Justice, dissenting.

Accepting the court's conclusion that remarriage of a former spouse constitutes a substantial change of circumstances which requires the termination of alimony, I am not persuaded that alimony payments in the case at bar should be terminated. The majority recognizes that the rule of automatic termination of alimony upon remarriage should not apply when the alimony is in fact intended to provide child support. In the case at bar it is not altogether clear that alimony was intended solely for Jenith's benefit; what was termed "spousal support" may also have had a related child support function. Vonnie Voyles's earlier requests for reduction in alimony payments were apparently denied because the superior court was of the view that Vonnie's combined payments of $500 ($350 for child support and $150 for alimony) were needed for the minor child's care. Given the fact that a portion of Jenith's alimony may have actually had a child support function, I think it inappropriate to eliminate all alimony without this issue being first remanded to the superior court for resolution.[1]

My additional disagreement with the court's opinion centers on the adoption of an automatic termination of alimony rule. Given that the principal purpose of alimony is to ensure that the economic needs of the dependent spouse are met, I favor adoption of a rule which will accord the dependent spouse an opportunity to rebut the prima facie case of substantial change in circumstances warranting termination of alimony which flows from the fact of remarriage. In my view, such a rule would provide a dependent spouse with support only in the exceptional circumstance where it would be unjust and unreasonable to terminate alimony.[2]

---

1. Minimally, Jenith retains the option to move in superior court for increased child support.

2. Adoption of the prima facie rule would not require rejection of either the multi-spousal support or certainty rationales which underlie the majority's automatic termination rule. Under the prima facie rule alimony would survive remarriage only in those exceptional circumstances which demonstrate an ongoing and just need for the continuation of such payments.

Admittedly, my position in the case at bar is somewhat at variance with *Estate of Kuhns v. Kuhns*, 550 P.2d 816 (Alaska 1976). There this court held that the obligation to make alimony payments, in the absence of an agreement to the contrary, does not survive the death of the obligor. My change of position is based upon the conclusion that it is preferable to adopt a rule which, in the exceptional circumstance, will permit the continuation of alimony.