Lloyd **MARQUARDT, Jr., Plaintiff and Appellant,**

v.

**Betty MARQUARDT, an incompetent person, represented by Ephraim REMPFER, Jr. and Sandy Drago, Guardians, Defendant and Appellee.**

No. 14495.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1986.

Decided Nov. 26, 1986.

Glen A. Severson of Fingerson & Severson, Huron, for plaintiff and appellant.

Robert V. Haeder of Blue & Haeder, Huron, for defendant and appellee.

MORGAN, Justice.

In 1981, Lloyd Marquardt, Jr., (Lloyd) and Betty Marquardt (Betty) were granted a decree of divorce which incorporated by reference a support agreement. The decree of divorce provided for the payment of alimony in the amount of $200 per month from Lloyd to Betty. The alimony was to "terminate upon the death of either Plaintiff or Defendant." On August 13, 1983, Betty was remarried and upon learning of this remarriage Lloyd moved the trial court for a termination of the alimony support. The trial court denied Lloyd's motion to terminate and he appeals.

It is Lloyd's lone contention that the trial court abused its discretion by not terminating the alimony payments effective as of the date of Betty's remarriage. Lloyd urges that the trial court erred when it considered Betty's remarriage as "simply one of the factors the Court must consider in determining whether a modification of alimony is deserving." We agree with this contention and reverse and remand.

Initially, we note that the trial court has the general power to modify a decree for alimony even if that decree is based upon an agreement entered into by the parties. *Shoop v. Shoop,* 58 S.D. 593, 237 N.W. 904 (1931). "In a proceeding for modification of alimony [the] burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification." *Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983). The operative question, then, is whether Lloyd met his

burden in proving a change of circumstances.

"Proof that the spouse receiving spousal support payments has remarried establishes a *prima facie* case requiring the court to terminate the support payments unless there are extraordinary circumstances which justify continuance of the payments." *Bauer v. Bauer,* 356 N.W.2d 897, 898 (N.D.1984). *See Nugent v. Nugent,* 152 N.W.2d 323 (N.D.1967); *Wolter v. Wolter,* 183 Neb. 160, 158 N.W.2d 616 (1968). *But cf. Carruth v. Carruth,* 212 Neb. 124, 321 N.W.2d 912 (1982). We agree that remarriage establishes a *prima facie* case for termination of alimony payments. "The general rule in Iowa, and elsewhere, is that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony obligation, it shifts the burden to the recipient to show that extraordinary circumstances exist which require the continuation of the alimony payments." *In re Marriage of Shima,* 360 N.W.2d 827, 828 (Iowa 1985).

While we recognize that in some states remarriage is grounds for automatic termination of alimony benefits,* we feel the more judicious course is to hold that remarriage establishes a *prima facie* showing supporting termination. Sound public policy abounds to support this holding. South Dakota law places a statutory duty on one spouse to support the other. SDCL 25-7-1. As has been said by a number of other courts, it is "illogical and unreasonable" that a spouse should receive support from a present spouse and a former spouse at the same time. *Marriage of Shima, supra; Wolter, supra.*

In *Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980), the parties failed to enter into an agreement for support and the trial court ordered support of $200 per month under authority of SDCL 25-4-41. In *Hanks,* however, the trial court failed to provide for termination of the payments upon the spouse's remarriage. As a result,

---

* *See, e.g., Voyles v. Voyles,* 644 P.2d 847 (Alaska 1982); N.Y.Dom.Rel.Law § 248 (McKinney 1977).

"we modif[ied] the alimony provision to provide for its continuation only until the remarriage of [spouse]." *Id.* at 528. We obviously recognized the policy supporting this holding, although it was not specifically set out.

Because the trial court considered remarriage as "simply one of the factors the court must consider" we reverse and remand for a determination of whether Betty can show the extraordinary circumstances which must exist prior to the continuation of the alimony payments.

WUEST, C.J., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., concurs specially.

GERKEN, Circuit Judge, dissents.

GERKEN, Circuit Judge, sitting for FOSHEIM, J., disqualified.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (concurring specially).

I would also reverse the trial court but would remand with instructions to terminate all alimony.

Remarriage automatically terminates alimony. *See* Annot., 48 A.L.R.2d 270 (1956). I support the holding of the Supreme Court of Alaska, *Voyles*, cited in the majority opinion. Basically, the Alaska Supreme Court holds that it is against public policy that a woman should have support or its equivalent during the same period of time from each of two men.*

Subsequent to her divorce from Lloyd Marquardt, Jr., Betty Marquardt married a gentleman by the name of Kenneth Holtrop. Take stock of SDCL 25–7–1, which provides:

* However, Alaska frowns upon alimony and seeks "to provide for the financial needs of spouses by a property disposition, rather than by alimony." *Voyles*, 644 P.2d at 849 (quoting *Malone v. Malone*, 587 P.2d 1167, 1168 (Alaska

A person shall support himself or herself and his or her spouse out of his or her property or by his or her labor.

This simply means that Kenneth Holtrop owes a statutory duty to support his wife. She is the recipient of the beneficial language of the statute: she is, by law, entitled to receive support from her husband. Kenneth Holtrop is her husband. Lloyd Marquardt, Jr., is not her husband. Further, during the year 1984, which is the critical year, Kenneth Holtrop had an income of $27,820 and was well able to support his wife.

Can this happen under the majority's open-ended decision? Jane Doe is married to John Doe; they are divorced and he is required to pay alimony. Jane then marries John Smith; he must support her by state law and the trial judge, when they are divorced, orders alimony. Jane now receives alimony from two different men. Enter Fred Smith. He marries Jane but, alas, alack, this third marriage goes awry and they are divorced. Yes, the trial court orders alimony as Fred is very well-to-do and is convinced Jane should have support (alimony) money. Where will this cycle of repetitive alimony (support) end? It should end with the first remarriage. When the new husband says "I will" or "I do," he is the individual who bears the responsibility of providing food, shelter, clothing, medicine, and general care for his new wife. And not the ex-husband. An ex-husband might have a new wife to support. By law, he would be required to support her.

Unlike the prima facie rule, only the rule requiring automatic termination can provide some certainty to an independent spouse who might also wish to enter into new marital relationships, raise a family, or take on new financial responsibilities.

To permit a spouse to elicit the support of two spouses simultaneously, a conceivable result under the prima facie rule, would be unreasonable. Because there

1978)). *Cf.* my most recent special writing on alimony, *Tate v. Tate*, 394 N.W.2d 309, 311 (S.D. 1986) (Henderson, J., specially concurring), wherein I supported an alimony award of $200.00 due to the circumstances of the case.

is a legal obligation of support embodied in the new marital relationship, the obligation of support from the past marital relationship should end.

*Voyles,* 644 P.2d at 849. Authorities, other than Alaska, supporting my viewpoint: *Chaachou v. Chaachou,* 135 So.2d 206, 221 (Fla.1961); *Despain v. Despain,* 78 Idaho 185, 189, 300 P.2d 500, 503 (1956); *Simpson v. Simpson,* 18 Md.App. 626, 627, 308 A.2d 410, 412 (1973); *Crum v. Upchurch,* 232 Miss. 74, 82, 98 So.2d 117, 121 (1957).

This Court has the power to eliminate an alimony award on appeal. It is a most specific statute. SDCL 25-4-46.

*See Connelly v. Connelly,* 362 N.W.2d 91, 92 (S.D.1985) (Henderson, J., dissenting), for historical birth, growth, and evolution of alimony.

GERKEN, Circuit Judge (dissenting).

I dissent.

Today's decision makes a significant change in the well-founded rule that the "burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification." *Rousseau v. Gesinger,* 330 N.W.2d 522, 525 (S.D.1983). This "change in circumstances" is nearly always measured in dollars and cents. *Lambertz v. Lambertz,* 375 N.W.2d 645 (S.D.1985); *Moller v. Moller,* 356 N.W.2d 909 (S.D.1984); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981); *Myhre v. Myhre,* 296 N.W.2d 905 (S.D. 1980); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). The majority equates the recipient spouse's remarriage with an improved financial or economic condition, thereby mandating the termination of alimony in all but the most "extraordinary" of "circumstances." I disagree with this conclusion for two principal reasons.

I do not believe remarriage is necessarily more conclusive proof of the recipient spouse's improved financial or economic condition than many other facts and circumstances which might be demonstrated by the party seeking modification of the alimony decree. Thus, I would not elevate the recipient spouse's remarriage to the position of authority it holds in the eyes of the majority. Instead, I, like the trial court, would view the recipient spouse's remarriage simply as one of the many factors to be considered in determining whether a modification of alimony is deserving. This approach would allow the trial court to weigh every relevant factor and give each the emphasis it deserves. It is also consistent with the approach taken by several other courts. *Cooper v. Cooper,* 219 Neb. 64, 361 N.W.2d 202 (1985); *Burr v. Burr,* 353 N.W.2d 644 (Minn.Ct. App.1984); *Hettiger v. Hettiger,* 37 Mich. App. 431, 195 N.W.2d 10 (1972).

Furthermore, these parties entered into an agreement regarding property division and alimony which was adopted verbatim by the trial court in its divorce decree. This procedure is not atypical in South Dakota. *Connolly v. Connolly,* 270 N.W.2d 44, 47 (S.D.1978). This procedure also allows the parties to maximize favorable tax consequences by agreeing to make relatively larger alimony payments in return for a greater proportion of the marital assets. When faced with an application for modification of alimony, trial courts should give great weight to the agreements or stipulations of the parties which are incorporated into the divorce decree. *Couzens v. Couzens,* 140 Mich.App. 423, 364 N.W.2d 340 (1985); *Bryant v. Bryant,* 102 N.W.2d 800 (N.D.1960). This position would necessitate a modification of current South Dakota precedent which proscribes consideration of these types of underlying agreements. *Moller, supra; Blare v. Blare,* 302 N.W.2d 787 (S.D.1981); *Connolly, supra; Simmons v. Simmons,* 67 S.D. 145, 290 N.W. 319 (1940).

I would affirm the trial court's proper exercise of discretion under the appropriate legal standards.