153 N.J. Super. 99 (1976)
379 A.2d 67
FLORENCE MAY-HUTT EAMES, PLAINTIFF,
v.
RICHARD COMYN EAMES, II, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided March 25, 1976.
*101 Mr. Steven P. Haft for plaintiff (Messrs. Goldberg, Simon & Selikoff, attorneys).
Mr. Richard H. Thiele, Jr., for defendant (Messrs. Wharton, Stewart & Davis, attorneys).
GAYNOR, J.C.C., Temporarily Assigned.
This is plaintiff's motion for summary judgment seeking an award by this court of the $8,000 allegedly due from defendant under the terms of a separation agreement. The circumstances involved present a variation on the theme that a divorced wife's extramarital cohabitation is cause for the modification or termination of alimony.
The facts giving rise to the alleged obligation are not in dispute. Plaintiff and defendant entered into a separation agreement in May 1971 which, by its terms, survived the judgment of divorce entered in February 1973. Under the agreement plaintiff was to receive $2,000 a year from defendant until the time of any final divorce decree. At *102 such time the agreement provided that plaintiff would have an option, to be exercised within 30 days of the date of said decree, by which she could elect either to continue to receive $2,000 annually until she should remarry or to then receive a gross sum payment of $8,000 in lieu of all future alimony and support obligation. There was some dispute regarding plaintiff's notice to exercise the option to receive the gross sum payment, but it is now conceded that timely notice was proffered. However, the payment opted for was never made by defendant and plaintiff brought suit in the Law Division to collect the sum. The case was subsequently transferred to the Chancery Division inasmuch as it is a matrimonial action, and thereafter plaintiff filed the present motion.
This motion was submitted to the court on the pleadings, affidavits and briefs of the parties. The complaint alleges the making of the agreement, the annual payments made by defendant, the entry of a judgment of divorce, the exercise by plaintiff of her option for the lump sum payment and the failure of defendant to make said payment. The answer generally admits the allegations of the complaint but denies liability for the payment and also sets forth the separate defense that the contractual obligation was terminated because of plaintiff's cohabitation with paramours since the separation of the parties. An affidavit of defendant also contains statements concerning such cohabitation by plaintiff. No affidavit of plaintiff has been submitted.
Defendant contends that this motion should be denied because a substantial issue of fact exists with respect to plaintiff's alleged engagement in various meretricious relationships. Defendant asserts that proof of such relationships, accompanied by a showing that either the amount due will be used for the support of plaintiff's paramours or that she receives support from those with whom she cohabits, could act as an equitable bar to recovery. Defendant further argues that enforcement of the agreement, under such circumstances, would be contrary to public policy.
*103 Plaintiff asserts that this court should specifically enforce the agreement because, by its terms, the parties granted each other license to live apart "as though unmarried" and to engage in any activity without interference. Presumably plaintiff believes this license encompasses extramarital sexual activity. Plaintiff also maintains that post-divorce unchastity does not terminate an agreement but might, under certain circumstances, provide a basis for modification. Since no petition for a modification was submitted by defendant, plaintiff believes this court to be without jurisdiction to modify the agreement in question.
Dealing with plaintiff's second contention first, it is noted that a matter involving marital separation agreements must be brought in the Chancery Division, since traditionally contracts between husband and wife were not enforceable at law. Cohen v. Cohen, 121 N.J. Eq. 299 (Ch. 1936). We therefore do not adhere to normal contract principles in regard to enforcement. In accordance with general equitable principles, such agreements will be enforced only to the extent that the effect of such enforcement would not prove inequitable or unconscionable. Schiff v. Schiff, 116 N.J. Super. 546 (App. Div. 1971). Thus, although defendant's request is for termination of the agreement, such termination is only the end of a continuum composed of degrees of enforceability, all of which are always available to a court of equity. Defendant has, by seeking a termination, impliedly requested this court to determine where on the spectrum of enforceability this agreement falls. The fact that no application for modification was specifically made in no way precludes us from examining all the facts relevant to the exercise of our equitable power.
The early case of Suozzo v. Suozzo, 16 N.J. Misc. 475, 1 A.2d 930 (Ch. 1938), makes clear that a former wife owes no duty of chastity to her former husband. In that case, the Court held that the obligation of support is absolute, not reciprocal. The application of that principle led the court to conclude that a woman's adultery subsequent *104 to a divorce could not successfully be interposed by the husband as a defense to the enforcement of a permanent alimony order, or that adultery was not change enough in the circumstances to mandate a modification of an existing court order. This premise has also been applied in a series of cases in which the adultery was engaged in subsequent to the execution by the parties of a separation agreement. Thomas v. Thomas, 104 N.J. Eq. 607 (E. & A. 1929); Equitable Life Assur. Soc. v. Huster, 75 N.J. Super. 492 (App. Div. 1962); Cohen v. Cohen, 121 N.J. Eq. 299 (Ch. 1936). See Sabbarese v. Sabbarese, 104 N.J. Eq. 600 (Ch. Div. 1929). In these cases the court concluded, in essence, that subsequent unchastity was an event sufficiently foreseeable so that the husband could have expressly made support payments contingent upon the continued chastity of his former wife if such was to be the bargain of the parties. Such holdings tacitly recognize that such activity on the part of a divorced woman is not so contrary to public policy as to, as a matter of law, imply such a dum casta clause in every separation agreement.
Recently, however, the courts of this State have been presented with situations in which the divorced woman had not only committed adultery, but was also cohabiting. Wertlake v. Wertlake, 137 N.J. Super. 476 (App. Div. 1975); Garlinger v. Garlinger, 137 N.J. Super. 56 (App. Div. 1975); Grossman v. Grossman, 128 N.J. Super. 193 (Ch. Div. 1974); Edelman v. Edelman, 124 N.J. Super. 198 (Ch. Div. 1973). In Grossman, involving court-ordered alimony, it was determined that cohabitation gave rise to a rebuttable presumption that the woman was receiving support from the live-in paramour. This receipt of outside support was deemed a sufficient change of circumstances to warrant a modification of the court order, as would any significant change in the income of either party. Edelman involved cohabitation by a woman subsequent to both a divorce and the execution of a separation agreement. The court refused to enforce the agreement because it determined *105 that support payments were inuring to the benefit of the paramour. An additional influencing factor in that case, however, was the precipitous drop in the ex-husband's income since the execution of the agreement, which element is not present in the instant case.
The two most recent cases, Garlinger and Wertlake, involved facts similar to Edelman, except for reduced income on the part of the former husband. In these cases the courts reiterated the maxim that mere unchastity did not render enforcement of the agreement unconscionable. Both courts determined that the dispositive issue was whether or not the ex-wife's cohabitation reduced her need for the agreed upon support payments. Neither case clarified the extent of the reduction necessary to "shock the conscience of the court," but it would seem that the standard set out in Schiff v. Schiff would apply. It would further appear that given the long-standing treatment of post-divorce unchastity by the courts of this State, cohabitation should be considered only as it relates to reduced financial needs. Also, if, as in Edelman, support payments inured to the benefit of a paramour, it would be consistent with past court pronouncements to treat the matter no differently than if support payments were inuring to the benefit of any new party sharing the dwelling. See Grossman v. Grossman, supra. No moral stigma should influence the consideration. Thus, defendant's assertion that enforcement of the instant agreement would violate public policy is not sustainable. This conclusion is not a condonation of conduct that may be offensive to accepted moral standards, but rather is in keeping with the obligation of this court to recognize and implement the legal purposes of post-judgment support and alimony. See Garlinger v. Garlinger, supra.
The contention that a change in plaintiff's financial circumstances resulting from cohabitation might constitute sufficient reason for a modification of defendant's obligation under the agreement is in accord with the general rule as applied in Garlinger and Grossman. The prior *106 applications of this rule, however, have involved court-ordered or agreed periodic payments of alimony, rather than gross sum settlements. Although agreements for lump sum payments in lieu of installments do not preclude subsequent judicial modification to allow additional support to the former wife upon a showing of necessity, there is no precedent for relieving the former husband of compliance with his contract to settle future alimony by the payment of a gross sum. See Price v. Price, 33 N.J. Super. 545 (Ch. Div., 1955); Parmly v. Parmly, 16 N.J. Misc. 447, 1 A. 646 (Ch. 1938), aff'd 125 N.J. Eq. 545 (E. & A. 1939). Fairness would dictate that such relief should be available to the former husband upon a proper and adequate showing of changed circumstances. Without attempting to detail the circumstances that might be deemed appropriate for the granting of such relief, it would seem that conditions such as involuntary financial collapse, the onset of permanent disabilities requiring unexpected expenditures, unanticipated obligations for the care and treatment of dependents, or even the absence of need of support by the former wife for any reason, including cohabitation, occurring prior to the time that payment of the settlement was due, could constitute a change of circumstances warranting a modification of the former husband's obligation. To allow such relief after the accrual of the obligation would enable the obligor to voluntarily defer compliance under the agreement for the purpose of claiming relief from the obligation because of conditions which might subsequently arise. This would be contrary to public policy, as rewarding and possibly promoting noncompliance of settlement agreements, and could not be countenanced.
In the present case the settlement of $8,000 was due and payable within 30 days after the entry of the judgment of divorce in February 1973. Until then defendant had been making the annual payment of $2,000 to plaintiff pursuant to their agreement. Defendant refused to pay the gross sum settlement because of information received by him from third *107 parties that plaintiff was, and had been since the time of their separation, cohabiting with one or more paramours. Such an allegation is the basis of defendant's affidavit submitted in opposition to the present motion. No reply has been made by plaintiff to these assertions other than the assertion that such conduct is not violative of the parties' compact that they would live separate and apart as though unmarried and be free to engage in any activity without interference, and that it is not a legally accepted reason for defendant's refusal to comply with the agreement.
As previously indicated, the determinative issue is whether the alleged cohabitation of plaintiff has affected her need for the support money, either because of receiving support from her paramour or the probability of her utilizing the amount sought, or a portion thereof, to support a paramour. Proof of either circumstance would be reason for granting relief to defendant by way of modification of his obligation under the agreement. The pleadings and affidavits contain uncontroverted allegations of past and present cohabitation by plaintiff, thereby raising an issue as to her need or use of further support monies from the defendant. See Grossman v. Grossman, supra. Additionally, the contention that plaintiff's alleged conduct, and the attendant financial implications resulting therefrom, were encompassed by the agreement raises a question as to the contractual intent of the parties.
It is fundamental that a motion for summary judgment may be granted only if the pleadings and affidavits on file show palpably that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. R. 4:46-2; Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67 (1954). In deciding whether a genuine issue as to a material fact exists, the moving papers and pleadings must be considered most favorably to the party opposing the motion and all doubts are to be resolved against the movant. If there is even a slightest doubt as to the existence of a factual issue, *108 the motion should be denied. Ruvolo v. American Cas. Co., 39 N.J. 490 (1963); United Advertising Corp. v. Metuchen, 35 N.J. 193 (1961); Devaney v. Sarno, 122 N.J. Super. 99 (App. Div. 1973). Also, summary disposition should be exercised with much caution. Devlin v. Surgent, 18 N.J. 148 (1955). The application of these principles to the instant proceeding requires a denial of the relief now sought by plaintiff. Considering the pleadings and affidavits in a manner most favorable to defendant, the cohabitation of plaintiff since the separation presents a genuine issue of fact bearing upon defendant's obligation to provide further support for plaintiff. The materiality of this factual issue is evidenced by the presumption arising from proof of such conduct that plaintiff was either being supported by others or was using the funds for the support of her paramours. A just resolution of these issues can be arrived at only after a full inquiry has been made as to plaintiff's need for the payment. Similarly, a determination of the contractual intent of the parties is more properly a matter for a plenary hearing.
For these reasons, we conclude that plaintiff's motion should be denied.