Lloyd A. MYHRE, Plaintiff and Appellant,

v.

Ella S. MYHRE, Defendant and Appellee.

Lloyd A. MYHRE, Plaintiff and Appellee,

v.

Ella S. MYHRE, Defendant and Appellant.

Nos. 12870, 12911.

Supreme Court of South Dakota.

Argued Feb. 27, 1980.

Decided Sept. 24, 1980.

Thomas M. Frankman of Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, for Lloyd A. Myhre; Gene E. Pruitt of Willy, Pruitt, Matthews, Farrell, Frankman & Johnson, Sioux Falls, on the brief.

Thomas J. Welk of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for Ella S. Myhre; Russell R. Greenfield of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, on the brief.

HENDERSON, Justice.

## ACTION

Appellant Lloyd A. Myhre appeals under SDCL 15–26–1 from an order of contempt entered against him for failure to perform under a decree of divorce. Ella S. Myhre, appellee, in response to this appeal, moved to obtain attorneys' fees in advance which motion was denied. Appellee cross appeals from the order denying her request for appellate attorneys' fees. For the sake of convenience, counsel for both parties have agreed to consolidate the appeals. The order of contempt is affirmed in part and reversed in part. The order denying attorney's fees is affirmed.

## FACTS

Appellant and appellee were legally divorced on April 8, 1975. The parties stipulated and agreed that appellant would pay $230.00 per month alimony and insurance premiums until appellee became eligible to receive social security benefits or remarried. These payments commenced on May 1, 1975.

After the divorce, appellee moved to Florida where she lived in a mobile home. During March of 1977 appellee sold her mobile home and moved in with and kept house for Lloyd F. Quint, whom she had met while living in Florida. She was 60 years of age and struggling to make a living on a monthly income of $300.00. This living arrangement existed until appellee and Quint were legally married approximately two years later. Appellee lives with Quint either at his home in Florida or at her lake home in Minnesota.

Appellee kept house for Quint and he did yardwork for her when they were at her Minnesota home. Quint and appellee had a joint checking account. During this living arrangement, appellee planned on legally changing her surname to Quint. On occasion appellee would sign her surname as Quint. Appellee and Quint maintained separate sleeping rooms and there were no

sexual relations between the two due to appellee's religious beliefs and physical impairment. Quint, who was retired, had health problems. Appellee's surname appeared as both Myhre and Quint in several Florida newspaper columns.

Based upon what he considered a reasonable and honest belief that appellee had remarried, appellant discontinued alimony payments on December 4, 1977, without seeking judicial modification for termination of the payments. Appellant notified appellee by a letter dated December 4, 1977, that he would no longer be making alimony payments due to her "remarriage."

The trial court factually found that appellee and Quint held themselves out as husband and wife and that appellee's living arrangement was of no financial benefit to her. Appellee and Quint were married on January 5, 1979. An order to show cause was issued on September 5, 1978, requiring appellant to show cause, if any, why he should not be adjudged in contempt of court for failure to pay alimony to appellee. A hearing on the matter was held on November 29, 1978. The trial court found that appellant was not justified in discontinuing his alimony payments and, on June 13, 1979, held appellant in contempt. Appellant was directed to pay appellee the alimony arrearages and interest thereon, plus appellee's attorneys' fees and costs below. Appellant appeals from this order.

## ISSUES

### I.

Did the trial court err in adjudging appellant to be in contempt of court? We hold that it did.

### II.

Was cohabitation by an ex–spouse with another under this set of facts such a substantial change in circumstances so as to warrant termination of alimony payments? We hold that it was not.

### III.

Is appellant required to pay interest on the alimony arrearages? We hold that he is not.

### IV.

Did the trial court abuse its discretion in granting appellee attorneys' fees and costs below and in denying appellee's request for attorneys' fees in advance for appeal? We hold that it did not.

## DECISION

### I.

Appellant contends that the trial court erred in adjudging him to be in contempt of court for failing to pay alimony to appellee in accord with the divorce decree and settlement of April 8, 1975. We agree. The record contains ample evidence reasonably indicating that appellee was remarried at the time appellant terminated alimony payments. Appellee had been living with a man since the spring of 1977. She often used his surname and openly acted as though she was married to him. Further, appellant retained a private detective in November of 1977 to investigate the marital status of appellee. When the private detective met appellee, she introduced herself as the wife of Quint.

The four elements of contempt are (1) the existence of an order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful or contumacious disobedience of the order. *Hanisch v. Hanisch*, 273 N.W.2d 188 (S.D.1979). "A party is not in contempt of court for a failure to comply with an order directing him to pay money unless . . . his refusal was willful, contumacious, and without just and reasonable grounds." *Malec v. Malec*, 196 Neb. 533, 538, 244 N.W.2d 82, 86 (1976). We hold that appellant's failure to continue the alimony payments was based upon his reasonable good faith belief that appellee had remarried. Therefore, the order of contempt against appellant is reversed.

### II.

Appellant also contends that appellee's cohabitation with another constitutes a sufficient change in circumstances to cause automatic termination of the alimony obligation. We do not agree.

■ Modification of alimony payments can be ordered even though the original judgment was based upon an agreement between the parties. *Connolly v. Connolly,* 270 N.W.2d 44 (S.D.1978). Also, a default in payments of alimony does not prevent a court from entertaining jurisdiction on an application for modification. *Dougherty v. Dougherty,* 76 S.D. 318, 77 N.W.2d 845 (1956). An order to pay alimony can only be modified upon a showing of a subsequent change in circumstances between the parties involved. *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977).

The issue of what effect cohabitation by an alimony recipient has on the obligation to pay alimony is currently divided into two jurisprudential camps. One view is that such a living situation automatically terminates the alimony obligation. *See Taake v. Taake,* 75 Wis.2d 115, 233 N.W.2d 449 (1975); *Rubisoll v. Rubisoll,* 242 Miss. 225, 133 So.2d 534 (1961); *Weber v. Weber,* 153 Wis. 132, 140 N.W. 1052 (1913). We do not adopt this view. The other view considers whether, as a result of the unmarried cohabitation, there has been a significant change in the economic situation of the cohabitor to warrant a modification or suspension of the alimony payments. *See Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345 (1976); *Eames v. Eames,* 153 N.J. Super. 99, 379 A.2d 67 (Ch.Div.1977); *Marriage of Bainer,* 27 Or.App. 703, 556 P.2d 1377 (1976); *Byrd v. Byrd,* 252 Ark. 202, 478 S.W.2d 45 (1972).

Only two states currently have enacted statutes addressing the issue. New York law provides that an alimony obligation may be terminated if the recipient cohabits with another of the opposite sex and the couple hold themselves out as being married. *See* N.Y. Dom.Rel. Law § 248 (McKinney 1977). California Civil Code § 4801.5(a) (West Supp.1978) provides: "[T]here shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex. Upon such a finding of changed circumstances, the court may modify the payment of support . . . ."

■ We adopt the position that cohabitation, in and of itself, is not a circumstance upon which an order modifying or terminating alimony payments can be based. Rather, the cohabitation of an alimony recipient is a circumstance that may be considered insofar as it improves the recipient's economic status. The act of cohabiting can encompass a myriad of situations and conditions. Two people may live together for only a short time, keep their respective assets totally separate, and retain different surnames. On the other hand, a couple may cohabit for several years, pool their economic resources, use the same surname, hold themselves out publicly as husband and wife and have children. A blanket rule providing for alimony modification when the recipient ex–spouse cohabits with another individual, with no regard to any improvement in the recipient's economic position, would create an overbroad principle of potentially grave inequity. We hold that cohabitation by an alimony recipient is to be considered a sufficient change of circumstances for alimony modification only when it affects the financial needs of the recipient.

■ We now must determine if appellee's economic well–being was enhanced by her act of cohabitation. Appellee and her cohabitor maintained a joint checking account but she also maintained her own checking and savings account. Aside from this fact, however, there was no direct evidence of any economic improvement in appellee's status. Indeed, even the maintenance of a joint checking account by the couple does not necessarily mean appellee had access to more funds. The account could have been set up as such solely for the sake of the couple's convenience. Appellant did not elicit any evidence as to what expenses were paid from the account and by whom. Appellant would have us assume that the taking of extended trips by appellee with her cohabitor and the presumably joint payment of living expenses at the couple's Minnesota and Florida residences logically dictates a finding of economic improvement in appellee's condition. Appellant has shown very little evidence which would indicate

that appellee's need for alimony has decreased. Rather, appellant alleges that such a decrease in need for support automatically occurred when appellee began her cohabitation. We refuse to make such an assumption in the absence of supporting evidence. Thus, in accordance with our rule requiring evidence of a beneficial economic change in the cohabiting recipient's status, and the lack of evidence to support such a change in regard to appellee, the alimony payments due during appellee's cohabitation must be paid by appellant as per the parties' original stipulated agreement. The "[p]ayment of alimony 'cannot be avoided because it is burdensome. There must be a showing either that further payments are not necessary, or of such an inability to pay as reasonably to excuse performance.'" *Guinter v. Guinter*, 72 S.D. 554, 557–558, 37 N.W.2d 452, 453 (1949). Appellant herein carried the burden to demonstrate that a modification of the divorce decree was necessary and this burden was not met. Therefore, we affirm the trial court's order requiring appellant to pay back alimony of $3,220.00.

### III.

Appellee requests that appellant be ordered to pay interest on the alimony arrearages. As stated earlier in this opinion, we do not believe appellant's non–payment of alimony was a willful or contumacious act. Appellant had reason to believe his obligation to pay alimony had expired. When circumstances exist which support a good faith termination of alimony payments, equity refuses to allow the recipient to collect any interest on the past due support installments. *Sutton v. Leib*, 199 F.2d 163 (7th Cir. 1952). Accordingly, appellant is not required to pay $328.32 interest on the arrearages. However, appellee was entitled to receive the alimony arrearages as of June 13, 1979, the date of entry of judgment against appellant. Thus, appellant is to pay the interest on the arrearages which accrued subsequent to the date of judgment. *Lien v. Lien*, 278 N.W.2d 436 (S.D. 1979); *Riemenschneider v. Riemenschneider*, 239 Iowa 617, 32 N.W.2d 68 (1948).

### IV.

Appellant contends that the award of attorneys' fees and costs to appellee in the court below was inequitable as she was capable of paying them. It appears that appellant had a gross income of $50,628.00, $31,000.00 and $23,000.00 for the years 1975, 1976, and 1977, respectively. We recognize that such an award rests in the sound discretion of the trial court. SDCL 15–17–7; *Hansen v. Hansen*, 273 N.W.2d 749 (S.D.1979); *Rock v. Rock*, 89 S.D. 583, 236 N.W.2d 191 (1975). Upon review of the record, we conclude that the trial court weighed each party's financial condition and did not abuse its discretion in regard to an award of $800.00 for attorneys' fees and costs of $138.65 to appellee.

Appellee also appeals from the trial court's order denying her request for attorneys' fees in advance for purposes of appeal. Again, under SDCL 15–17–7, the issue of attorneys' fees rests with the sound discretion of the trial court and its decision will not be upset absent a showing of an abuse of that discretion. *Hansen v. Hansen*, supra, *Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979). No such abuse of discretion was shown on these facts.

In appeal #12870, the order is reversed as to the finding of contempt and the imposition of $382.32 in interest and affirmed as to imposition of $3,220.00 in alimony arrearages and $938.65 in costs and attorney's fees, and the matter is remanded with directions to the trial court to modify its order in accordance herewith to include termination of alimony as of the date of appellee's remarriage, January 5, 1979.

In appeal #12911, the order of the trial court denying appellee attorney's fees for appeal is affirmed.

All the Justices concur.