Ann ROUSSEAU, Plaintiff and
Appellant,

v.

Gerald GESINGER, Defendant
and Appellee.

No. 13712.

Supreme Court of South Dakota.

Considered on Briefs Oct. 15, 1982.

Decided Feb. 23, 1983.

Krista Clark, Dakota Plains Legal Services, Eagle Butte, and Yvette Hall War Bonnet, Dakota Plains Legal Services, Mission, for plaintiff and appellant.

Robert Kelley of Johnson & Kelley, Lemmon, for defendant and appellee.

MORGAN, Justice.

This appeal arises from an amended decree of divorce and a denial of a motion for a new trial. Ann Rousseau Gesinger (Rousseau), appellant, brought a contempt action against Gerald Gesinger (Gesinger), appellee, for nonpayment of alimony. The trial court amended the decree of divorce by eliminating alimony and denied Rousseau's subsequent motion for a new trial. Rousseau appeals and we reverse and remand.

Rousseau and Gesinger were divorced on March 8, 1978, after almost twenty-five years of marriage. The couple agreed that Rousseau would have custody of the minor daughter, and that Gesinger would have custody of the four minor sons. The property settlement agreement, which was incorporated into the divorce decree, provided that (1) Gesinger would pay Rousseau $400/month alimony and $150/month child support; (2) Gesinger would receive all of the livestock, farm machinery, tools, equipment, Federal Land Bank stock, grain bins, feed, seed, grains, pickup trucks, automobiles, and nontrust real property (approximately 1500 acres); and (3) Rousseau, in addition to the alimony, received her federal trust land to which she was entitled as an American Indian, "free and clear of any encumbrance or interest" of Gesinger.[1] The federal trust land was approximately 1700 acres.

At some point after the divorce, the minor daughter went to live with Gesinger, who had remarried. Both parties agreed that Gesinger would then stop paying child support. Subsequently, in October, 1980, Gesinger stopped paying the $400/month alimony. Rousseau brought this action to compel Gesinger to pay the alimony. At the hearing Gesinger petitioned the court to modify the divorce decree by eliminating the alimony. The trial court then amended the divorce decree by eliminating the alimony and further held that Rousseau had entered into an oral lease agreement with Gesinger permitting him to use her federal trust land rent-free. The result is that Rousseau has nothing left from the marriage.

Rousseau appeals[2] seeking reinstatement of alimony, reversal of the trial court's

1. The record shows that in October, 1978, Gesinger prevailed upon Rousseau to permit a mortgage of her trust land to the Farmers Home Administration for which he received a sum of $300,000. In exchange for permitting this mortgage on her trust land, Gesinger promised Rousseau that he would improve the "home place" for the benefit of their four sons and that she could live there rent free. Presently, only one son is living there and after her illness of cancer, the son ordered her to leave since she was "too sick to bother with." In May 1982 Rousseau requested through the court an accounting of this loan. That order to show cause is not before this court on this appeal.

2. While Rousseau raises five issues in this appeal, only four of those issues are before this court on review. SDCL 15-6-52(a) provides, in pertinent part:

A copy of the proposed findings shall be served upon all parties to the action. The court may direct counsel for the prevailing party to prepare findings and counsel shall, within ten days after announcement of decision, unless otherwise ordered, prepare, serve and submit to the court with copies to opposing counsel, proposed written findings of fact and conclusions of law together with the proposed judgment or decree.

The court shall not sign any findings therein prior to the expiration of five days after service of the proposed findings during which time the parties may in writing submit to the court and serve on their adversaries their objections or additional proposals. Thereafter the court shall make or enter such findings and conclusions as may be proper.

This hearing was held on June 30, 1981. On September 8, 1981, the trial court announced its decision in a memorandum opinion. Although SDCL 15-6-52(a) requires the prevailing party to prepare findings within ten days, Gesinger did not prepare such findings until December 15, 1981. During the interim, Rousseau repeatedly objected to the delay. Also,

holding that there was a "rent-free lease arrangement," and a rehearing on the contempt action.[3]

■ The first issue on appeal addresses the burden of proof during the contempt hearing for Gesinger's failure to pay alimony. There are two burdens of proof here. The plaintiff in such a contempt hearing must establish the four elements of a prima facie case to warrant a finding of contempt for failure to pay alimony. These four elements are: "(1) the existence of an order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful or contumacious disobedience of the order." *Myhre v. Myhre,* 296 N.W.2d 905, 907 (S.D. 1980). *See Hanisch v. Hanisch,* 273 N.W.2d 188 (S.D.1979). Rousseau satisfied these elements by her affidavit and testimony at trial.

■ Gesinger's defense was inability to pay the alimony. With this defense, the burden of proof shifts to the defendant to establish his inability to comply with the court's order. *Jameson v. Jameson,* 306 N.W.2d 240 (S.D.1981); *Talbert v. Talbert,* 290 N.W.2d 862 (S.D.1980). The party required to show cause for inability to pay has the burden of proof to meet the prima facie case made by the applicant. 56 Am. Jur.2d *Motions, Rules, and Orders* § 34 (1971). Thus, the burden shifted to Gesinger to prove his inability to pay.

The trial court did not recognize this shift in burden of proof. The court expressly stated that Gesinger did not have any burden of proof in this proceeding. Since the trial court placed the entire burden of proof on Rousseau, the trial court incorrectly stated the burden of proof in this proceeding.

■ Even under the correct burden of proof, Gesinger's evidence did not establish his inability to pay. Although proof was requested by Rousseau, Gesinger produced no corroboration of his testimony that he could not pay the alimony. We note "[t]he general rule that the weight of the evidence and the credibility of the witnesses is largely a matter of the trial court's determination[.]" *Jameson,* 306 N.W.2d at 242; *see Bailey v. Bailey,* 77 S.D. 546, 95 N.W.2d 533 (1959). In these particular circumstances, however, due to the extreme self-serving nature of his testimony, Gesinger's testimony alone does not meet the burden of proving his inability to pay. The record indicates Gesinger needed to present additional evidence to meet his burden of proof. Such evidence could have taken the form of documentation or testimony. Since Gesinger did not prove his inability to pay, he did not overcome Rousseau's prima facie case establishing a finding of contempt.

The second issue on appeal is whether Gesinger properly petitioned for modification of alimony and met the burden of proof for modification. SDCL 25–5–41[4]

SDCL 15–6–52(a) precludes the court from signing the findings until five days after service of the proposed findings on the opposing party. Here, however, not only did the court immediately sign the findings on December 15, 1981, but also Gesinger did not mail the signed findings to Rousseau until December 24, 1981. Rousseau did not respond with proposed findings. Rather, on January 5, 1982, Rousseau moved for a new trial, detailing numerous errors of law at trial. SDCL 15–26A–9 provides: "When reviewing an order denying a new trial, the Supreme Court may review all matters properly and timely presented to the court by the application for a new trial." Although Rousseau did not propose findings, her motion for a new trial preserved four of the five issues appealed to this court.

3. There were two contempt orders before the trial court. The first contempt order involved Gesinger's failure to pay alimony. When Ges-

inger failed to appear at the hearing for failure to pay alimony, the trial court judge, Judge Hersrud, entered a second show cause order, this order regarding Gesinger's failure to appear. Since Judge Hersrud subsequently retired from the bench, this proceeding was transferred to the trial court judge below. At the subsequent hearing on these two contempt orders, the new trial court judge dismissed the contempt order addressing Gesinger's failure to appear at the initial hearing before Judge Hersrud. The trial court proceeded on the original show cause order for failure to pay alimony. The show cause order for failure to pay alimony is the only contempt order before this court on appeal.

4. SDCL 25–4–41 provides:
  Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the

permits a trial court to modify its orders concerning alimony. Rousseau questions whether Gesinger should be permitted to petition for modification during a contempt proceeding for failure to pay alimony. Rousseau seeks this court to require an affirmative petition for modification which is separate from a contempt proceeding.

■ SDCL 25-4-41 does not require a separate, affirmative petition. Although in numerous cases a party initiated the cause of action by seeking modification of alimony, *see, e.g., Jameson v. Jameson,* 90 S.D. 179, 239 N.W.2d 5 (S.D.1976); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981); *Hanisch, supra,* this court has also reviewed cases in which the request for modification was filed in response to the contempt action. *Jameson v. Jameson,* 306 N.W.2d 240 (S.D.1981); *Myhre, supra.* Due to the mere five-day notice before trial of the petition for modification, Rousseau did not have an opportunity for discovery to challenge Gesinger's petition for modification. Although this short notice prejudiced Rousseau, South Dakota statutory and case law does not require a petition for modification to be a separate proceeding from a contempt action. SDCL 25-4-41; *Jameson,* 306 N.W.2d 240 (S.D.1981); *Myhre, supra.* Consequently, Gesinger was not prohibited from seeking modification of alimony at the contempt proceeding.

■ In a proceeding for modification of alimony, however, burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification. *Myhre, supra.* At the hearing, the trial court did not recognize that the burden was on Gesinger. Further, even if the court had recognized the burden, the evidence offered by Gesinger falls short of meeting this burden of proof. Since Gesinger failed to meet his burden of proving change in circumstances, the trial court erred in eliminating the alimony payments.

■ The third issue is whether Rousseau and Gesinger have an oral contract that Gesinger may lease, free of charge, Rousseau's federal Indian trust land. In the divorce decree of these parties, the trial court stated as a finding of fact that Rousseau's separate property includes the Federal Indian trust land. The trial court now attempts to modify the property settlement by stating that Gesinger may lease this land free of charge. The trial court's sole basis for this "lease" is that before the divorce, Gesinger did not pay rent to his wife, Rousseau, for his use of the land.

While allowances for alimony and child support are subject to modification when circumstances change, SDCL 25-4-41, the division of property is not subject to modification. *Holt v. Holt,* 84 S.D. 671, 176 N.W.2d 51 (1970). The property settlement in a divorce action is designed to settle with finality the property rights of parties as of time of entry of judgment; each party is entitled to their respective property as of that date. *Lien v. Lien,* 278 N.W.2d 436 (S.D.1979). In the divorce decree, Rousseau retained title to her Federal Indian trust land as an item of the property settlement, "free and clear of all encumbrance or interest by [Gesinger]." Since a lease involves an interest in land, *Shaw v. George,* 82 S.D. 62, 141 N.W.2d 405 (1966), the trial court's finding below that a "rent-free lease" exists between Rousseau and Gesinger modifies the property settlement. Because modification of a property settlement is precluded, *Lien, supra; Holt, supra,* the trial court is barred from holding that such a lease exists.[5]

___

life of the other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

5. Further, the finding that a "rent-free lease" exists here violates the statute of frauds. The statute of frauds, SDCL 53-8-2, requires agreement involving an interest in land to be in writing. SDCL 53-8-2 provides, in pertinent part:

The following contracts shall not be enforceable by action unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or his agent, thereunto authorized in writing:

. . . .

(3) An agreement for the sale of real estate or an interest therein or lease of the same for

**526**

Considering the numerous errors of law by the trial court, we reverse and remand for a new trial. In view of our remanding for a new trial, we do not have to reach the remaining issues on appeal.

We reverse and remand to the trial court with instructions:

(1) To reinstate the alimony payments provided for in the original decree of divorce;

(2) To strike that portion of the judgment which provided that Gesinger had a free oral lease of Rousseau's Indian land; and

(3) To hold a hearing and make findings on Gesinger's alleged contempt for failure to make alimony payments.

All the Justices concur.

a period longer than one year, but this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof.

A lease involves an interest in land. *Shaw v. George*, 82 S.D. 62, 141 N.W.2d 405 (1966). Also, because the trial court held the present alleged lease to be on-going, this alleged lease could not be performed within one year. Ac- cordingly, this lease falls within the statute of frauds. The mere fact that this alleged lease is oral and there is no written evidence to prove its existence, renders it unenforceable unless there has been part performance thereof. Here, there has not been part performance of a "rent-free lease." The trial court's conclusion that such a lease exists and is enforceable is in error as a matter of law.