2000 SD 101

**Margaret CULHANE, Plaintiff and Appellant,**

v.

**Stephen W. MICHELS, Defendant and Appellee.**

Nos. 21284, 21285.

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided July 26, 2000.

Gale E. Fisher, Sioux Falls, South Dakota, Attorneys for plaintiff and appellant.

Thomas J. Welk and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice

[¶ 1.] The circuit court held that (1) alimony payments due before the effective date of SDCL 25-7-7.3 and 7.4 could be retroactively modified and that the alimony recipient had not met her burden of showing extraordinary circumstances justifying continuance of alimony after her remarriage. In addition, the court (2) denied reimbursement for medical expenses, but awarded (3) past due private school tuition, and (4) child support arrearages; and denied (5) paternity testing, and (6) disbursements. We affirm (1) in part and reverse in part; affirm (2), affirm (3), but remand for further findings, and affirm (4), (5) and (6).

## Background

[¶ 2.] Margaret Culhane and Stephen W. Michels were married on May 27, 1978. The two met while attending the University of South Dakota in Vermillion. After their marriage, Michels continued his education and acquired an MBA degree. Two daughters were born during the marriage: the first on May 16, 1980, and the second on June 6, 1982. Culhane and Michels agreed in early 1986 to end their marriage.

[¶ 3.] In July 1986 they entered into a property settlement and child custody agreement. Attorney John Billings prepared the necessary documents. Billings was counsel for the Broadcaster Press, the publishing business where Michels worked as a general managing partner and Culhane performed payroll and various other office duties. Billings represented Michels. Culhane was not represented. Under the settlement, Culhane was given custody of the children, Michels was to pay $800 per month child support, the children's medical insurance and uncovered medical expenses were allocated between the parties, and Michels would pay Culhane $1,100 in monthly alimony for two years. In addition, the parties agreed that the children would attend St. Agnes School, a Catholic grade school in Vermillion, and that Michels would pay the tuition and fees. On July 22, 1986, the circuit court adopted the settlement agreement and entered a decree of divorce.

[¶ 4.] Eleven years later, in September 1997, Culhane sued on the divorce decree to recover delinquent alimony and child support, as well as unpaid medical expenses and tuition. Michels sought to abate retroactively his alimony obligation. Both sides moved for summary judgment. Following various legal proceedings, the court ultimately held that Culhane was entitled to a portion of the alimony pay-

ments together with interest. It also granted Culhane the tuition and child support arrearages requested, denied her claim for medical expenses, and denied Michels' request for paternity testing. Both sides were denied disbursements.

[¶ 5.] Culhane now appeals the court's decision that she cannot recover all unpaid alimony, medical expenses, and disbursements as the "prevailing party." Michels, by notice of review, appeals the award of interest, tuition, and child support, and the denial of his request for paternity testing. As the circuit court made its decision based on depositions and affidavits, with no live testimony, we review the case de novo unimpeded by any deference to the court's findings. *Miller v. Weber*, 1996 SD 47, ¶ 7, 546 N.W.2d 865, 867 (citing *Muhlenkort v. Union County Land Trust*, 530 N.W.2d 658, 660 (S.D. 1995)).

### 1. Alimony and Interest

[¶ 6.] In the divorce decree of July 22, 1986, Michels was directed to pay Culhane $1,100 alimony per month for twenty-four months. Michels made only one payment. Culhane remarried in August 1986. On the advice of his attorney, Michels claims, he stopped paying alimony. Culhane says that Michels contacted her several months later and asked if he could delay payments while he "got on his feet." She agreed to a temporary postponement. She also asserts that in November or December of 1986, attorney Billings invited her to his office and asked her to sign a form releasing Michels of his alimony obligation. She refused. Culhane says she called Michels in May of 1989 requesting some of the money he owed, but he declined. Michels did not file a motion to terminate his alimony obligation until September 1998.

[¶ 7.] Crucial to the question before us is the enactment of SDCL 25–7–7.3 and 7.4, effective July 1, 1987. SDCL 25–7–7.3 states:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

SDCL 25–7–7.4 provides:

Any payment or installment of support under an order for support, as defined by § 25–7A–1, whether entered by a court or an administrative entity of this state or of any other state or jurisdiction, which is unpaid after the date it is due, is a judgment by operation of law, with the full force, effect and attributes of a judgment of this state, including enforceability, and is entitled, as a judgment, to full faith and credit in this state.

[¶ 8.] In holding Michels responsible for the alimony payments due after the enactment of SDCL 25–7–7.3, the court ruled that remarriage will not automatically cancel alimony; instead, a party seeking modification must petition for a change. Because Michels did not petition for modification until 1998, the payments due after the enactment of the statute became vested and could not be retroactively terminated. However, the court differentiated the payments due before July 1, 1987, concluding that the statute did not apply to alimony accruing before its effective date. The court held that Michels could seek retroactive termination of alimony due before July 1, 1987, and that Culhane must establish extraordinary circumstances showing why alimony should continue after her remarriage. Because she failed to establish such circumstances, the court granted Michels an abatement of that part of the unpaid alimony. Culhane believes the court erred in refusing to give retroactive application to the statutes.

[¶ 9.] Michels argues that at the time the alimony was owed, he did not have an obligation to petition for modification or termination. Referring to *Marquardt v. Marquardt*, 396 N.W.2d 753 (S.D.1986), he asserts that the law at the time their divorce decree was entered allowed him to simply stop alimony payments on Culhane's remarriage. In *Marquardt*, the former husband moved to terminate alimony when he learned of his ex-wife's remarriage. *Id.* at 754. He argued that it was error for the lower court to consider the remarriage as "simply one of the factors the Court must consider" when deciding whether to modify alimony. *Id.* We stated, "[i]n a proceeding for modification of alimony [the] burden of proving a change in circumstances sufficient to warrant modification is upon the party seeking modification." *Id.* (quoting *Rousseau v. Gesinger*, 330 N.W.2d 522, 525 (S.D.1983)) (alteration in original). The operative question was whether the husband had "met his burden in proving a change of circumstances." *Id.* In meeting this burden, proof that the former wife had remarried established "a prima facie case requiring the court to terminate the support payments unless there are extraordinary circumstances which justify continuance of the payments." *Id.* (citations omitted). This language hardly endorses the automatic termination hypothesis. *Peterson v. Peterson*, 434 N.W.2d 732, 734 (S.D. 1989).

[¶ 10.] Michels then cites *Thomerson v. Thomerson*, 387 N.W.2d 509 (S.D. 1986), to argue that alimony payments accruing before July 1, 1987 may be abated retroactively. In *Thomerson*, the couple's 1979 divorce decree awarded the wife $150 alimony per month. *Id.* at 511. She received her last alimony payment in 1981 after execution on a judgment for arrearages up to that point. She started a contempt proceeding in early 1985, seeking over $6,000 in unpaid alimony. The husband in turn sought retroactive modification of alimony and abatement of arrearages, as well as cancellation of future alimony payments. We acknowledged without elaborating that "an alimony order may be modified to retroactively abate all or part of alimony arrearages.…" *Id.* at 514.

[¶ 11.] The enactment of SDCL 25-7-7.3 substantially changed the retroactive modification of support awards. In *Vellinga v. Vellinga*, 442 N.W.2d 472 (S.D.1989), the question was whether SDCL 25-7-7.3 should be given retroactive application. There, the husband and wife divorced in 1981, and the husband was required to pay fifteen percent of his earnings as child support. He made no payments in 1986 and few in 1987. In September 1987, on an order to show cause, the wife sought the past due amounts. After considering SDCL 2-14-21, which states that "[n]o part of the code of laws … shall be construed as retroactive unless such intention plainly appears," we reasoned:

A narrow window is provided for modification of past due payments which accrue after notice of hearing is given to the obligee. Any other past due support payments are not subject to modification. *The use of the term any, understood in its ordinary sense, clearly encompasses both past due support payments which accrued after the effective date of the statute and those which accrued prior to July 1, 1987.*

*Id.* at 474 (emphasis added). Thus, we specifically held that the statute "is to be applied retroactively." *Id.*

[¶ 12.] The application of the statute to past-due alimony was examined in *Gunn v. Gunn*, 505 N.W.2d 772 (S.D.1993). There, the husband and wife were divorced in 1982. Their decree required the husband to pay $65 per week in alimony until the wife remarried or died. He made the payments until June 1986. The court found him in contempt for past-due alimony in October 1986, after which he resumed making payments. In April 1987, he again stopped paying and never resumed. In October 1992, he moved to

modify his alimony obligation. Citing SDCL 25–7–7.3, we affirmed the trial court's contempt order, holding the husband responsible for alimony arrearages beginning on April 27, 1987. He could not come before the court "and expect five years of nonpayment of his support obligation to be erased." *Id.* at 775. *See also Kier v. Kier,* 454 N.W.2d 544 (S.D.1990) (the statute applies retroactively); *Taylor v. Ellenbecker,* 471 N.W.2d 587 (S.D.1991) (past due support obligations cannot be modified).

[¶ 13.] Michels contends that SDCL 25–7–7.3 applies to child support obligations, not alimony. He points out that while this statute is located in the chapter titled "support obligations," encompassing support for both spouses and children, it is more strategically positioned within those statutes controlling only child support. Much the same argument can be said for SDCL 25–7–7.4. That statute refers to support "as defined by § 25–7A–1," and states that amounts unpaid after they become due are judgments as a matter of law. Although SDCL 25–7A–1, which defines "order for support," currently does not include alimony in its definition, when SDCL 25–7–7.4 became effective, the definition in § 25–7A–1 included "any order of the court or an administrative agency which provides for periodic payment of funds for the support of a child *or maintenance of a spouse ....* "[1] (Emphasis added). At the time SDCL 25–7–7.3 and 7.4 were enacted, the Legislature evidently intended the statutes to cover both child support and alimony. Additionally, this Court has repeatedly interpreted these enactments as applying to alimony. *See Taecker v. Taecker,* 527 N.W.2d 295, 299–

300 (S.D.1995); *Gunn,* 505 N.W.2d at 775; *Steffens v. Peterson,* 503 N.W.2d 254, 259–60 (S.D.1993). "Alimony payments become final judgments as they fall due." *Taecker,* 527 N.W.2d at 299–300; *see also Steffens,* 503 N.W.2d at 259 ("Support payments, such as alimony, become final judgments as they fall due.").

[¶ 14.] Michels next argues that waiver and laches bar recovery of alimony. For ten years, he asserts, "Culhane did nothing to request or demand the alimony payments." In response, Culhane says that Michels requested a delay in paying shortly after the divorce, and that in 1989 she asked him for some of the alimony he owed. In our view, Michels alleges no act or statement by Culhane that misled him to his detriment. *See Harms v. Northland Ford Dealers,* 1999 SD 143, ¶ 17, 602 N.W.2d 58, 62. Waiver requires a "clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right." *Ducheneaux v. Miller,* 488 N.W.2d 902, 911 (S.D.1992) (quoting *Hammerquist v. Warburton,* 458 N.W.2d 773, 778 (S.D. 1990)). These facts do not support a waiver.

[¶ 15.] Laches is also inapplicable. To prove laches, Michels must show that: "(1) [Culhane] had full knowledge of the facts upon which the action is based, (2) regardless of this knowledge, she engaged in an unreasonable delay before commencing the suit, and (3) that allowing her to maintain the action would prejudice [Michels]." *Conway v. Conway,* 487 N.W.2d 21, 24 (S.D.1992) (emphasis omitted); *Golden v. Oahe Enterprises., Inc.,* 90 S.D. 263, 277, 240 N.W.2d 102, 110 (1976). Prejudice will not be inferred from the mere passage of time. *City of Sioux Falls*

---

1. SDCL 25–7A–1(12) currently provides:

   "Order for support," a judgment, decree, or order, whether temporary, final, or subject to modification, issued by a court or an administrative agency of competent jurisdiction, which provides for the support and maintenance of a child, including a child who has attained the age of majority under

the law of the issuing state, or of the parent with whom the child is living, which provides for monetary support, health care, arrearages, or reimbursement, and which may include costs and fees, interest and penalties, income withholding, attorney's fees, and other relief[.]

   This language was enacted in 1997. 1997 S.D.Laws ch. 155, § 5.

*v. Miller*, 492 N.W.2d 116, 120 (S.D.1992) (quoting *Cheskey v. Cheskey*, 298 N.W.2d 180, 183 (S.D.1980) (other citations omitted)). This is an action on a divorce judgment which may be commenced "within twenty years after the cause of action shall have accrued[.]" SDCL 15–2–6(1); *Hershey v. Hershey*, 467 N.W.2d 484, 486 (S.D. 1991).[2] Logically, enforcing a valid judgment would rarely invoke the application of laches, especially in a case where the judgment requires periodic payments. We affirm the circuit court's order on alimony that came due after July 1, 1987, but reverse the order on payments due before that date, and direct that those amounts are to be included in the arrearages.

[¶ 16.] Michels appeals the circuit court's award of interest. Alimony is a support obligation subject to interest at the judgment rate. SDCL 21–1–13.1; SDCL 15–16–3; *see Vander Woude v. Vander Woude*, 501 N.W.2d 361, 364 (S.D. 1993). A support installment becomes a judgment by operation of law as payments become due and owing. SDCL 25–7–7.4. "An award of interest on support arrearages is a matter of judicial discretion." *Vander Woude*, 501 N.W.2d at 364 (quoting *Kier*, 454 N.W.2d at 546). Michels asserts that he was under the excusable impression his obligation to pay alimony automatically ended when Culhane remarried. He claims that the law at the time was confusing, and that Culhane never asked for any of the alimony payments until 1996. These circumstances, he states, demonstrate his good faith belief in the termination of his alimony obligation, and equity should refuse to allow Culhane to collect interest. He cites *Prairie Lakes Health Care System, Inc. v. Wookey*, 1998 SD 99, ¶ 37, 583 N.W.2d 405, 419 and *Myhre v. Myhre*, 296 N.W.2d 905 (S.D.1980) in support of his position.

[¶ 17.] We held in *Myhre* that when circumstances support a "good faith termi-nation of alimony payments," equity will not allow an interest award to the recipient on past due amounts. *Id.* at 909. There, the parties stipulated that alimony would end when the wife remarried. *Id.* at 906. She moved in with a man and they held themselves out as married. The ex-husband gave written notice that he would no longer be making alimony payments because of her "remarriage." *Id.* at 907. Here, in contrast, there was no such agreement. Culhane states that Michels approached her and asked to postpone his payments, and that his attorney asked her to waive alimony. In addition, Culhane says that she asked Michels for the past due alimony payments in 1989. Even if she had not done so, failure to demand support payments does not negate the obligation to make those payments. *Vander Woude*, 501 N.W.2d at 365. We find insufficient justification for Michels' stated belief that his support obligation had terminated, and affirm the circuit court's award of interest.

### 2. Medical Expenses

[¶ 18.] Culhane argues that the circuit court ignored the language of the judgment and decree of divorce when it interpreted the decree to direct her to assume "any medical, dental or eye care expenses of the children" not covered by medical insurance. Medical expenses were incurred on behalf of the two children between 1994 and 1998. The parties' property settlement "adopted" in the decree of divorce contained the following:

> It is agreed that [Michels] shall keep in effect the medical insurance on the children of the parties until such time as [Culhane] finishes her education and is duly employed. It is agreed and understood that when [Culhane] is employed, [Michels'] obligations to maintain said insurance shall terminate. It is understood that [Michels] shall assume the

---

**2.** No question has been raised on renewal of the judgment. SDCL 15–16–33 (judgment may be renewed "at any time prior to the expiration of ten years from the first docketing of such judgment.").

costs of any medical, dental or eye care expenses of the children which are not covered by said insurance. This duty shall also remain in effect until [Michels'] obligation to maintain said insurance terminates.

When this provision in the settlement agreement was repeated in the decree of divorce, the last sentence was omitted. Culhane argues that this sentence was obviously eliminated because the judge felt it was unfair to burden her with both insurance and uncovered medical expenses. She argues that it is the judgment that controls, not the stipulation. However, as we noted earlier, the settlement agreement was expressly "adopted" in the decree. *See Weekley v. Weekley,* 1999 SD 162, ¶ 18, 604 N.W.2d 19, 24. Thus, no actual conflict exists between the agreement and the decree.

[¶ 19.] "In determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties." *Kier,* 454 N.W.2d at 547 (citations omitted). Our reading of the insurance and medical expense provision indicates that the parties intended that once Culhane was employed, she would become responsible for both the insurance and the expenses not covered by insurance. After the divorce, Culhane returned to school and obtained a degree in nursing. The record clearly shows that she was employed before the medical expenses were incurred. We affirm the circuit court's decision that Michels is not obligated to make these payments.

3. *This one-page exhibit lists the amount Culhane argues she is owed for back alimony, past due child support, medical expenses, and tuition. The following is the breakdown shown for tuition:*

[oldest daughter] school years  $ 700.00
Sept.1986 – May 1988 (2)
$350/year
[youngest daughter] school years  $2524.00
Sept. 1986–May 1992 (7)

### 3. Tuition Expenses

[¶ 20.] Michels appeals the circuit court's reimbursement award to Culhane for expenses incurred for the children's tuition for the years they attended private school. In their settlement agreement, the parties provided that the children would attend St. Agnes School in Vermillion as long as Culhane lived in Vermillion and the children were eligible to attend that school. On expenses, the agreement stated: "It is understood that the tuition or any other fees incurred as a result of this attendance shall be paid by [Michels]."

[¶ 21.] Michels argues that the statute of limitations expired on this claim. He asserts that contract principles apply when a settlement agreement is interpreted, that the limitations period governing contract claims is six years, and therefore the claim for tuition expenses is barred. This claim, however, is based on a decree of divorce, and as we explained earlier, the time limit is twenty years. SDCL 15–2–6(1); *Hershey,* 467 N.W.2d at 486.

[¶ 22.] The circuit court found that Culhane met her burden of proving that she incurred tuition expenses of $3,325. This figure was based on her deposition, which in turn was based on "Exhibit 1," apparently prepared by Culhane.[3] Her testimony and the exhibit, however, contradict an exhibit from St. Agnes School, which shows that for the school years spanning the fall of 1986 through the spring of 1989, the tuition totaled $1,200.[4] "Exhibit 1" also miscalculates the number of school years involved, which under the breakdown for the youngest daughter should be six rather than seven years.

$350/year X 5

$450/year X 1

$450/year X 1

4. *This tuition report indicates the following was paid to St. Agnes for those school years:*

| | | |
|---|---|---|
| 1986–1987 | School Year | $350.00 |
| 1987–1988 | School Year | $425.00 |
| 1988–1989 | School Year | $425.00 |

The single St. Agnes exhibit was the only evidence of the amount of tuition expenses incurred during the years in question. With these discrepancies, although Culhane has met her burden of proving that tuition was incurred, the precise amount of tuition remains unclear. We remand for further findings.

### 4. Child Support Arrearages

[¶ 23.] Michels challenges the circuit court's order finding him in arrears on child support. The court awarded Culhane $6,000 in past child support based on $400 per month for fifteen months of arrearages. The judgment and decree of divorce requires Michels to "pay the sum of $800 per month for the support and maintenance of the minor children until they reach the age of 18 years." From the outset, Michels and Culhane treated the child support as a separate obligation of $400 for each child. Michels deposited $400 per month in each girl's savings account, and Culhane withdrew money for the children's expenses from those accounts. When the oldest child turned eighteen in May 1998, Michels began paying $400 only to the youngest child's account. Michels argues that the parties' intent, as shown by their conduct, was to create an obligation to pay $400 for each child. He asserts that this interpretation is backed up by Culhane's own statement in her affidavit ascribing payments to each child.

[¶ 24.] In *O'Grady v. O'Grady*, 1998 SD 89, 582 N.W.2d 707, the divorce stipulation directed the father to pay $469 per month "until the minor children reach the age of (19) or graduate from high school, whichever occurs first." *Id.* ¶ 9, 582 N.W.2d at 709. When one of the four children turned nineteen and another turned eighteen and graduated from high school, the father prorated his obligation, paying for only two children ($117.50 per child) for approximately one year, then resumed paying the original amount set in the stipulation. *Id.* We held that there was no provision for a prorated distribution or an automatic reduction upon each child reaching the age of majority. *Id.* ¶ 15, 582 N.W.2d at 710. The proper remedy was for the father to seek a modification on one of the occurrences, and because he did not do so, the full support obligation continued. *Id.*

[¶ 25.] Similarly, in *Houser v. Houser*, 535 N.W.2d 882 (S.D.1995) the decree provided for child support of $400 per month "for and on behalf of the minor children," to continue until "said children shall attain the age of majority or until further order of the Court." *Id.* at 884. We held that this language did not provide for a pro rata distribution of the child support obligation, and therefore the amount was to remain at $400. *Id. See also Radigan v. Radigan*, 465 N.W.2d 483, 485 (S.D.1991) (order to pay $750 per month in child support "until both children reach the age of majority or until further Order of the Court" was not reduced when the oldest child reached majority).

[¶ 26.] Here, the decree does not prorate a support amount for each child. Instead, it provides for $800 per month until both reach eighteen. Whatever the parents' subjective understanding may have been, the decree proclaims their legal obligations. The circuit court ruled that Michels had not timely petitioned the court for modification of the child support obligation. Accordingly, we affirm the circuit court's ruling that Michels was obligated to pay $800 per month in accordance with the decree.

### 5. Paternity Testing

[¶ 27.] Michels moved for paternity testing to learn whether he is the biological father of the youngest daughter. He offered affidavits from two of Culhane's friends stating that she told them that she knew even when she was pregnant with this child that Michels was not the father. He states he only became aware of this recently. Culhane refused to answer questions on the topic during her deposition, which Michels asserts raises an

adverse inference. Without further explanation, the circuit court held that "Michels is not entitled to paternity testing at this time."

[¶ 28.] In *Godin v. Godin,* 168 Vt. 514, 725 A.2d 904 (1998), the Vermont Supreme Court addressed the question whether, six years after the divorce and adjudication of paternity, the father could disavow a child born during the marriage to the child's mother and presumed to be his for fourteen years. He sought no testing before the divorce decree. Six years after the divorce became final, rumors led him to suspect he was not the biological father. He filed a pro se motion for paternity testing, but the motion was denied. As in this state, Vermont has a rebuttable presumption of parentage when a child is born while the husband and wife are married. *Id.* at 909 (citing 15 Vt.Stat.Ann. § 308(4) (Cum.Supp. 1998)); *see* SDCL 25–5–3 ("The husband and wife are presumed to be the parents of any child born to the wife during the marriage. . . .").

[¶ 29.] Under this statutory presumption, the *Godin* court wrote, "the State retains a strong and direct interest in ensuring that children born of a marriage do not suffer financially or psychologically merely because of a parent's belated and self-serving concern over a child's biological origins." *Id.* at 910. The court acknowledged that other jurisdictions have rejected requests to reopen paternity judgments "absent clear and convincing evidence that it serves the best interests of the child." *Id.* (citing *In re JRW,* 814 P.2d 1256, 1266–67 nn. 6–7 (Wyo.1991) (collecting cases) (other citation omitted)). As the court explained:

> Although we understand plaintiff's interest in ascertaining the true genetic makeup of the child, we agree with the many jurisdictions holding that the financial and emotional welfare of the child, and the preservation of an established parent-child relationship, must remain paramount. Where the presumptive father has held himself out as the child's parent, and engaged in an ongoing parent-child relationship for a period of years, he may not disavow that relationship and destroy a child's long-held assumptions, solely for his own self-interest. . . . Whatever the interests of the presumed father in ascertaining the genetic "truth" of a child's origins, they remain subsidiary to the interests of the state, the family, and the child in maintaining the continuity, financial support, and psychological security of an established parent-child relationship.

*Id.* (internal citations omitted). The court stated that although the father had an opportunity to raise the issue of paternity during the divorce proceedings, he did not do so, and instead continued to treat the child as his own. *Id.* at 910–11. Finding that there was no basis to relieve the father of the legal and financial responsibilities of paternity, the court reasoned that a finding of nonpaternity would in essence leave the child without a father. *Id.* at 910 & n. 3.

[¶ 30.] Belated efforts to declare a child illegitimate, for whatever reasons, should seldom prevail. Michels has failed to show sufficient cause for paternity testing at this late juncture. The welfare of the child must be considered over the father's long delayed challenge to the child's parentage. Michels has treated both children as his own since birth. He claims that his request is not made to recover past child support, but merely to find out if he is the father and whether Culhane perpetrated fraud upon him.[5] These are not compelling enough reasons to disrupt the life of a child born during their marriage. *See Miles v. Stovall,* 132 Md.App. 71, 750 A.2d 729, 735–36 (2000);

---

**5.** Michels cites as authority for his request SDCL §§ 25–8–7, 9, and 12. These statutes authorize testing to establish paternity for support purposes, not to retrospectively challenge a child's presumptive legitimacy. *See Commonwealth v. O'Brien,* 390 Pa. 551, 136 A.2d 451 (1957).

*Monroe v. Monroe,* 329 Md. 758, 621 A.2d 898, 904–05 (1993); *McDaniels v. Carlson,* 108 Wash.2d 299, 738 P.2d 254, 261 (1987). We affirm the denial of Michels' request for paternity testing.

### 6. Disbursements to "Prevailing Party"

[¶ 31.] Finally, Culhane appeals the circuit court's denial of disbursements. The court held that neither party was entitled to costs or disbursements under SDCL 15–17–37 since "both parties prevailed on some of the issues and lost on some of the issues." Culhane argues that it is not necessary that she prevail on all her claims to be the "prevailing party."

[¶ 32.] A denial or award of disbursements is reviewed under the abuse of discretion standard. *High Plains Genetics Research, Inc. v. JK Mill–Iron Ranch,* 535 N.W.2d 839, 846 (S.D.1995). " 'Abuse of discretion' is discretion not justified by, and clearly against, reason and evidence." *Nelson v. Nelson Cattle Co.,* 513 N.W.2d 900, 906 (S.D.1994) (citing *Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D. 1991)).

[¶ 33.] "The prevailing party in an action is 'the party in whose favor the decision or verdict is or should be rendered and judgment entered.' " *Michlitsch v. Meyer,* 1999 SD 69, ¶ 12, 594 N.W.2d 731, 734 (quoting *Noble v. Shaver,* 1998 SD 102, ¶ 26, 583 N.W.2d 643, 648 (quoting *Strand v. Courier,* 434 N.W.2d 60, 65 (S.D.1988))). However, a court is not required to grant recovery for disbursements simply because a party has achieved the status of a prevailing party. *Id.* ¶ 13, 594 N.W.2d at 734. While SDCL 15–17–37 grants no discretion, SDCL 15–17–52 allows a court to "limit the taxation of disbursements in the interests of justice." This statute grants discretion to deny recovery of disbursements even though SDCL 15–17–37 does not. *Michlitsch,* 1999 SD 69, ¶ 15, 594 N.W.2d at 734. Here, where the record supports the court's determination, the denial of Culhane's request for disbursements was not against reason and evidence, and therefore was not an abuse of discretion.

[¶ 34.] Affirmed in part, reversed in part, and remanded.

[¶ 35.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.